**UNITED STATES OF AMERICA, Plaintiff**

**v.**

**GEORGE ROHLSEN, a/k/a "BOO", DARREL RIVIERE, a/k/a "SKALION", KITSON BROOMFIELD JARVIS, a/k/a "HABIB", STEVE HART, DARWIN R. CORNWALL, a/k/a "DOCTOR", PAUL PAYNE, a/k/a "JAMAL", GEORGE BROOKS, a/k/a "JAMBU", EDWIN VELASQUEZ, a/k/a "MILLER", and KEVIN CHRISTIAN, Defendants**

Crim. No. 1996-77

District Court of the Virgin Islands

Div. of St. Croix

May 12, 1997

CHARLES JENKINS, ESQ., and AZEKAH JENNINGS, ESQ., (Assistant U.S. Attorneys), *for Plaintiff*

GEORGE W. CANNON, JR., ESQ., *for Defendant Rohlsen*

MICHAEL A. JOSEPH, ESQ., *for Defendant Riviere*

ELLEN G. DONOVAN, ESQ., *for Defendant Jarvis*

ALBERT J. MEADE, ESQ., *for Defendant Hart*

MARTIAL A. WEBSTER, ESQ., *for Defendant Cornwall*

SCOTT A. BURTON, ESQ., *for Defendant Payne*

EDWARD H. JACOBS, ESQ., *for Defendant Brooks*

130

WILFREDO A. GEIGEL, ESQ., *for Defendant Velasquez*

RICHARD HUNTER, ESQ., *for Defendant Christian*

MOORE, *Chief Judge*

## MEMORANDUM

This matter is before the Court on motions to suppress audio tapes resulting from the government's interception of communications of the defendants.

## I. Facts

Defendants George Rohlsen ["Rohlsen"] and Darrel Riviere ["Riviere"] were arrested on October 17, 1996, and subsequently charged with various violations of federal drug trafficking laws. They were transferred to the Metropolitan Detention Center located at Guaynabo, Puerto Rico ["MDC"] where they were detained pending trial. Defendant Velasquez was also detained at MDC at the time Rohlsen and Riviere were transported to the facility.

The government alleges that while detained at MDC, Rohlsen, Riviere and Velasquez made certain incriminating statements during telephone calls using the telephone system provided for the inmate population to use to communicate with the outside world. Based at least in part on these taped conversations, the government filed a superseding indictment on January 16, 1997, which added charges to the indictment and additional defendants. A second superseding indictment was filed on March 11, 1997 adding still more counts and defendants.

The government has notified the defendants that it intends to use portions of these taped conversations at trial against all defendants. Motions to suppress have been filed by Rohlsen, Riviere, Steven Hart ["Hart"], Darwin Cornwall ["Cornwall"], Kitson Jarvis ["Jarvis"], which have been joined in by George Brooks ["Brooks"] and Edwin Velasquez ["Velasquez"]. These motions are currently before the Court and are addressed in a single opinion since the motions raise similar issues.

## II. Discussion

### A. The Law

The Omnibus Crime Control Act of 1968, 18 U.S.C. §§ 2510-2520 ["The Act"] in accordance with the Constitution, governs the use of electronic surveillance. The Act applies to the interception of telephone communications. 18 U.S.C. § 2510(1)-(2).

The Act requires as a general rule that in order to intercept communications, an application for an order must be submitted, in writing upon oath or affirmation, to a judge of competent jurisdiction. 18 U.S.C. § 2518(1). The application must contain specific information establishing probable cause. 18 U.S.C. § 2518(1)(a)-(f). The judge may require additional testimony or evidence, if necessary, before finding probable cause and issuing the requested order. 18 U.S.C. § 2518(2)-(3). An exception to this application requirement is contained in Section 2511(2)(c):

> It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

Under this provision, no prior judicial approval of the intercept is required.

### B. The Constitutionality of Consensual Interception

"Neither the Constitution nor any Act of Congress requires that official approval be secured before conversations are overheard or recorded by Government agents with the consent of one of the conversants." *United States v. Caceres*, 440 U.S. 741, 744 (1979). In *Caceres*, the Supreme Court held tapes of conversations between an Internal Revenue Service ["IRS"] agent and the subject of an audit could be used in a criminal prosecution of the audit subject, even though no application for a warrant had been made before the taping, in violation of IRS regulations. The Court held that under 18 U.S.C. § 2511(c), no application was required where one party, in this case the IRS agent, consented to the interception. The Court explained that "federal statutes impose no restrictions on recording a conversation with the consent of one of the conversants." *Id.* at 750.

■ Nor does the Constitution protect the privacy of individuals in the defendants' position. In *Lopez v. United States*, 373 U.S. 427, 439 (1963), the Supreme Court held that the Fourth Amendment provided no protection to an individual against the recording of his statements by the IRS agent to whom he was speaking. In doing so, the Court repudiated any suggestion that the defendant had a "constitutional right to rely on possible flaws in the agent's memory, or to challenge the agent's credibility without being beset by corroborating evidence that is not susceptible of impeachment," and instead concluded that "the risk that petitioner took in offering a bribe to [the IRS agent] fairly included the risk that the offer would be accurately reproduced in court, whether by faultless memory or mechanical recording."

An identical analysis was applied in *United States v. White*, 401 U.S. 745 (1971), to consensual monitoring and recording by means of a transmitter concealed on an informant's person, even though the defendant did not know that he was speaking with a government agent:

> Concededly a police agent who conceals his police connections may write down for official use his conversations with a defendant and testify concerning them, without a warrant authorizing his encounters with the defendant and without otherwise violating the latter's Fourth Amendment rights. . . . For constitutional purposes, no different result is required if the agent instead of immediately reporting and transcribing his conversations with defendant, either (1) simultaneously records them with electronic equipment which he is carrying on his person, . . . (2) or carries radio equipment which simultaneously transmits the conversations either to recording equipment located elsewhere or to other agents monitoring the transmitting frequency. . . . If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to

whom the defendant is talking and whose trustworthiness the defendant necessarily risks.

*Id*. at 751 (citations omitted). *See also, Caceres*, 440 U.S. at 750.

In numerous cases the Supreme Court has consistently ruled that the Constitution permits the use of tape recordings made pursuant to 18 U.S.C. § 2511(c) as long as one of the conversants has consented to the recording. The claims of expectation of privacy brought by defendants Hart, Cornwall and Jarvis are not adequate grounds to suppress these tapes according to Supreme Court jurisprudence. The remaining issue, then, is whether the defendants Rohlsen and Riviere voluntarily gave their consent to have their telephone calls monitored. If they did give such consent, then the tapes are admissible under 18 U.S.C. § 2511(c). If no such consent was obtained, then § 2511(c) does not apply and the tapes would be suppressed for failure to comply with the provisions of the Act.

## C. *The Consent of the Defendants*

The tapes were recorded from phone calls made by defendants Rohlsen, Riviere and Velasquez while at MDC. The issue remaining is whether the defendants voluntarily consented to have their conversations recorded.

At the evidentiary hearing held on these motions held on February 26, 1997, the government submitted copies of Bureau of Prison forms, titled "Acknowledgment of Inmate" ["Acknowledgment"]. The first paragraph of these forms reads as follows:

> The Bureau of Prisons reserves the authority to monitor (this includes recording) conversations on any telephone located within its institutions, said monitoring to be done to preserve the security and orderly management of the institution and to protect the public. An inmate's use of institutional telephones constitutes consent to this monitoring. A properly placed phone call to an attorney is not monitored. You must contact your unit team to request an unmonitored attorney call.

134

The second paragraph of the Acknowledgement states:

> I have read or had read to me (cross out one) the above notification on the monitoring of inmate telephone calls. I understand that telephone calls I make from institution telephones may be monitored and recorded.

On the form given to Riviere, the words "have read or" are crossed out of paragraph two, and the form was signed by Riviere and an MDC staff member on November 1, 1997. (Govt. Ex. 6, Hearing of February 26, 1997). On the form given to Rohlsen, the words "had read to me" are crossed out, and the form was signed and dated by Rohlsen and a staff member on October 25, 1996. (Govt. Ex. 4, Hearing of February 26, 1997). On the form given to Velasquez, the words "have read or" are crossed out, and it was signed and dated by Velasquez and a staff member on November 1, 1996. (Govt. Ex. 5, Hearing of February 26, 1997).

The defendants have posited several arguments why the Court should conclude that they did not consent to the tape recording of their phone calls. First, defendants argue that the use of the word "monitor" is unclear, and failed to give adequate warning. This argument is meritless, since the Acknowledgment in both paragraphs one and two mentions that the calls may be recorded.

■ The defendants challenge these statements as being taken in violation of the Fifth Amendment.[1] They claim that the standards established in *Miranda v. Arizona*, 384 U.S. 436 (1966) and its progeny require that an explicit waiver of the *Miranda* rights be obtained before statements of the defendant may be used against him. The defendants mischaracterize the *Miranda* doctrine. The Supreme Court has stated that in order for a *Miranda* violation to occur, the defendant must be interrogated by the police, or the police must somehow deliberately attempt to elicit a response from the defendant. *See, e.g., Rhode Island v. Innis*, 446 U.S. 291 (1980); *Brewer v. Williams*, 430 U.S. 387 (1977). In this case, there is absolutely no suggestion that the defendants were encouraged by the police to make calls to associates who are now defendants.

---

[1] The Fifth Amendment is made applicable to the Virgin Islands by Revised Organic Act of 1954 § 3; 48 U.S.C. § 1561. The Revised Organic Act of 1954 is found at 48 U.S.C §§ 1541-1645 (1995), *reprinted in* V.I. Code Ann., Historical Documents, 73-177 (codified as amended) (1995) ["Revised Organic Act"].

Certainly, any incriminating statements made during the conversations were not the result of interrogations by law enforcement officers. Since the defendants willingly and voluntarily engaged in the phone calls, *Miranda* does not apply.

The defendants argue that in assessing whether adequate consent was given, the law of the First Circuit should apply since the MDC is located in the First Circuit. The defendants rely on *United States v. Gerena*, 667 F. Supp. 911 (D.Conn. 1987) for this proposition. The defendants in *Gerena* had been suspected of participating in the bombing of a federal building in Puerto Rico. The government received authorization from a judge to electronically intercept oral and wire communications at various locations in Puerto Rico. These conversations resulted in incriminatory statements relating to the robbery of a Wells Fargo Depot in Connecticut. The defendants were brought to trial in Connecticut for the robbery. The Court found that the law of the First Circuit applied to the determination of the admissibility of the evidence, since the surveillance occurred there.

■ This case is markedly different from *Gerena*. Here, the crimes for which the defendants were being held at MDC had occurred in the Virgin Islands, which is within the Third Circuit. These defendants were only lodged in a federal prison in a district of the First Circuit because there was and still is no acceptable federal detention facility in the Virgin Islands. Moreover, these phone conversations were not intercepted as a result of the prior involvement on any judicial officer. Rather, the MDC has a policy of tape recording conversations of inmates for its own purposes which are totally unrelated to any ongoing criminal prosecution. The courts and judges of the First Circuit have no interest or involvement in these tape recordings or the prosecution of these defendants. For these reasons, this Court concludes that the law of the Third Circuit governs the admissibility of the tapes in this case.

■ While the Court of Appeals for the Third Circuit has not specifically addressed the application of § 2511(2)(c) to prison situations, it has opined on the general issue of consent. Although the right at stake in an exclusionary hearing to prevent admission of conversations recorded in violation of 18 U.S.C. § 2511 is

statutory, not constitutional, this Court looks to Fourth Amendment[2] precedent to determine whether a party to a communication consented to an interception within the meaning of 18 U.S.C. § 2511. *See, e.g., United States v. Kelly,* 708 F.2d 121, 125 (3d Cir.), *cert. denied,* 464 U.S. 916(1983) *(citing Schneckloth v. Bustamonte,* 412 U.S. 218 (1973) as setting forth the relevant contours of what constitutes voluntary consent). We must therefore apply *Bustamonte* to determine whether the consents of Riviere, Rohlsen and Velasquez were "free" and "voluntary."

■ Under the *Bustamonte* framework, consent is a question of fact to be determined from the totality of the circumstances. Under this test, consent is not voluntary merely because a person makes a "knowing" choice among alternatives; it must be an exercise of free will. *Bustamonte,* 412 U.S. at 224-25. The Court must determine whether the actor's free will "has been overborne and his capacity for self-determination critically impaired." *Id.* Consent to a wire intercept is not voluntary where "it is coerced, either by explicit or implicit means or by implied threat or covert force." *Kelly,* 708 F.2d at 125. Thus, the Court examines all the circumstances surrounding the defendants' consent to determine if it was a product of free will, or whether their will was overborne by explicit or implicit means. *See also United States v. Antoon,* 933 F.2d 200 (3d Cir. 1991).

■ After carefully assessing the totality of the circumstances, this Court concludes that Rohlsen, Riviere and Velasquez voluntarily consented to the recording of their phone calls. They had various options to choose from, since no one forced them to make these phone calls. There is not the slightest suggestion that the prison officials encouraged or lured them in to using the phone. The defendants' had already been arrested and charged, so there was no possibility that the defendants were cajoled into making calls with false promises. *See Antoon* at 204; *United States v. Donahue,* 885 F.2d 45 (3d Cir. 1989). Moreover, the defendants signed forms which specifically stated that their phone calls could be recorded.

---

[2] The Fourth Amendment is made applicable to the Virgin Islands by Revised Organic Act of 1954 § 3; 48 U.S.C. § 1561.

At the evidentiary hearing, the Court heard considerable testimony about the procedures which the Bureau of Prisons follows to make sure that prisoners are aware that their phone calls may be recorded. The MDC witnesses testified that the inmates are provided with rules and regulations, either in English or Spanish, stating that the calls may be monitored and recorded. There is an intake screening with an English or Spanish speaking counselor who explains the procedures and the forms to each inmate. The counselors who went over the forms with the defendants testified that they followed the procedures and explained the guidelines for making telephone calls. Rohlsen, Riviere and Velasquez all signed forms acknowledging that they had either read the provisions themselves or had the acknowledgment read to them that their phone calls might be monitored and recorded. Absent some evidence that they were coerced or misled, the Court can only conclude that the defendants knowingly and voluntarily consented to have their calls monitored and recorded.[3]

It is difficult to imagine what more the government could have done to make it clear to the defendants that the calls could be monitored and taped. This information was included in the guidelines given to them, on the form they signed, and they were told of this during their interview. All the evidence points to the conclusion that the defendants knew that their phone calls might be recorded, and that their consent was freely given. If they did not wish to submit to recording, they had the option not to use the phones. The fact that they knew of the recording and used the phones with such knowledge is further evidence of their consent.

■ Regarding the defendants receiving the calls, the claims that they deserved privacy in their calls are not persuasive. It does not violate an individual's constitutional or statutory privacy interests to introduce at a criminal trial tape recordings of his private conversations if the other party to those conversations voluntarily consented to their recording. *United States v. Caceres*, 440 U.S. at 744; *United States v. White*, 401 U.S. at 750-51; *United States v.*

---

[3] Both the Acknowledgment and the counselors made clear that confidential, unmonitored and unrecorded phone calls could be made by the defendants to their respective attorneys.

*Moskow*, 588 F.2d 882, 891 (3d Cir.1978); *United States v. Santillo*, 507 F.2d 629, 631-34 (3d Cir.), *cert. denied*, 421 U.S. 968 (1975); *United States v. Osser*, 483 F.2d 727, 730 (3d Cir.), *cert. denied*, 414 U.S. 1028 (1973); 18 U.S.C. § 2511(2)(c) (1976); see S.Rep. No. 1097, 90th Cong., 2d Sess. 66, 93-94, reprinted in 1968 U.S. Code Cong. & Ad. News 2112, 2153, 2182. "The principle underlying [this rule] is that when one reveals information to an individual, one takes the risk that one's confidence in that individual is misplaced." *Flaherty v. Arkansas*, 415 U.S. 995, 999 (1974) (Douglas, J., dissenting from the denial of certiorari). Neither the Constitution nor an Act of Congress affords protection "to a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." *Hoffa v. United States*, 385 U.S. 293, 302 (1966). Thus, no justifiable expectation of privacy is violated if the government subsequently uses that conversation at trial. *United States v. Kelley*, 708 F.2d 121, 124-125 (3d Cir. 1983).

## III. Conclusion

Under 18 U.S.C. § 2511(2)(c), the government may intercept phone calls without applying for a warrant if one of the parties consents. The Supreme Court has repeatedly affirmed the constitutionality of this statute. The facts of this case clearly show that the defendants consented to their telephone conversations being recorded by the authorities at MDC. Any rights of the defendants who received the phone calls to have private conversations do not override the consent of the prisoners to their phone calls being taped at MDC. The defendants who received the calls accepted the risk that the individual defendants they spoke with might allow the conversations to be recorded. Since the government had the consent of one of the parties to the conversations, the tape recordings are admissible against all defendants, and the defendants' motions to suppress the recordings will be denied.

ENTERED this 8th day of May, 1997.

## ORDER

For the reasons set forth in the accompanying Memorandum, it is hereby

ORDERED that the defendants' motions to suppress the recordings of phone calls made at the Metropolitan Detention Center in Guaynoabo, Puerto Rico by defendants Rohlsen, Riviere and Velasquez are DENIED.

ENTERED this 8th day of May, 1997.