In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-2032 et al.

In re: High Fructose Corn Syrup
     Antitrust Litigation

Dellwood Farms, Inc., et al.,

Plaintiffs-Appellants/Cross-Appellees,

v.

Archer Daniels Midland Company,

Defendant-Appellee/Cross-Appellant.

James R. Randall,

Intervenor-Appellee/Cross-Appellant.

Appeals from the United States District Court
for the Central District of Illinois.
Nos. 95 C 1477, 97 C1203--Michael M. Mihm, Judge.

Argued April 14, 2000--Decided June 19, 2000


Before Posner, Chief Judge, and Ripple and Rovner,
Circuit Judges.

Posner, Chief Judge.  These appeals grow out of a
class action antitrust suit that is pending in a
federal district court in Illinois. The suit is
by purchasers from Archer Daniels Midland and
other manufacturers and charges price fixing. In
an earlier criminal investigation of the alleged
price-fixing conspiracy, an investigation that
led to criminal proceedings unnecessary to
discuss here, an ADM vice president named
Whitacre made a number of secret recordings both
of face-to-face conversations, and telephone
conversations, with persons who he thought might
be (and most of them were, but not intervenor
Randall) involved in the conspiracy. He did this
under unusual circumstances. He had been
defrauding ADM and apparently wanted to deflect
the FBI's suspicions and so reported his
employer's price fixing to the FBI and suggested
that he tape record incriminating conversations.
The FBI agreed. Some of the recordings were used
in the criminal proceedings but many were not,
and those that were not remain in the files of
the Justice Department. The plaintiffs in the
class action have subpoenaed those recordings.
ADM resisted the subpoena, along with its former

employee Randall who though not implicated in the price fixing fears that some of the recordings contain embarrassing statements by him on unrelated matters. The Justice Department has no objection to releasing the recordings to the plaintiffs. The district judge ruled that the plaintiffs are entitled to them but, in the case of the telephone conversations, not until the trial. His ruling is before us under 28 U.S.C. sec. 1292(b).

A set of provisions of the federal criminal code commonly known as "Title III" regulates electronic surveillance both of "oral communications" and "wire communications." 18 U.S.C. secs. 2510 et seq. The latter term is broadly defined to include communications any part of which goes over a wire; so cellphone and satellite communications are covered. See 18 U.S.C. sec. 2510(1); H.R. Rep. No. 647, 99th Cong., 2d Sess. 31 (1986); United States v. Jackson, 207 F.3d 910, 914 (7th Cir. 2000); United States v. Rivera, 153 F.3d 809, 810-11 (7th Cir. 1998); United States v. Carrazana, 921 F.2d 1557, 1562 (11th Cir. 1991); Shubert v. Metrophone, Inc., 898 F.2d 401 (3d Cir. 1990); 1 James G. Carr, The Law of Electronic Surveillance sec. 3.2(a), p. 3-5 (2000). The former term ("oral communications") is rather narrowly defined as a nonelectronic "oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." The district judge thought that the face-to-face conversations that Whitacre surreptitiously recorded were not oral communications within this definition and so were outside the protections of the statute. The judge reasoned that the people whose conversations Whitacre was recording could have had no basis for supposing their conversations not subject to being recorded by one or more of the participants, because the only basis for such an expectation could be the Fourth Amendment, which has been held inapplicable to the recording of conversations to which one of the parties consents. United States v. Caceres, 440 U.S. 741, 750 (1979); United States v. White, 401 U.S. 745, 751-52 (1971); Lopez v. United States, 373 U.S. 427, 439 (1963); United States v. Eschweiler, 745 F.2d 435, 437 (7th Cir. 1984).

The telephone conversations that Whitacre recorded clearly fell within the statutory definition of wire communications. But the judge thought a limited disclosure of their contents to the plaintiffs authorized by section 2517(3), which allows a person to disclose the contents of lawfully intercepted wire communications "while giving testimony under oath or affirmation in any

proceeding held under the authority of the United States or of any State or political subdivision thereof." The judge rejected the argument that the only proceeding contemplated by this provision is a government proceeding, not a private suit such as we have here. But because he interpreted "while giving testimony" literally, to mean that the plaintiffs had no authority to obtain the recordings of Whitacre's wire communications until the trial, he thought it premature to decide whether those communications had been intercepted lawfully, which would mean in conformity with either section 2511(2)(c) or section 2511(2)(d). The first of these subsections provides that it is not unlawful under Title III for a person acting under color of law to record his own conversations, and the second that it is not unlawful for a person not acting under color of law to record his own conversations provided that he is not doing so for the purpose of committing a crime or tort.

The district judge was following the law of this circuit in holding that in defining "oral communications" by reference to a justifiable expectation that they would not be intercepted, Congress had limited the protection of the statute to situations in which the interception would violate the Fourth Amendment if done by the government. In re John Doe Trader Number One, 894 F.2d 240 (7th Cir. 1990); see also Dorris v. Absher, 179 F.3d 420, 424-25 (6th Cir. 1999); United States v. Longoria, 177 F.3d 1179, 1181-82 (10th Cir. 1999); Siripongs v. Calderon, 35 F.3d 1308, 1320-21 (9th Cir. 1994). One might wonder why, if the statute tracks the Fourth Amendment, the statute's drafters bothered to carve an express exception for oral communications intercepted by one of the parties to the communication, given that such interceptions do not violate the Fourth Amendment. Some cases in other circuits suggest, in conformity with the statutory language, that there can be a reasonable expectation that one's conversations even if not private will not be intercepted electronically. See, e.g., Angel v. Williams, 12 F.3d 786, 790 n. 6 (8th Cir. 1993); Walker v. Darby, 911 F.2d 1573, 1578-79 (11th Cir. 1990); Boddie v. American Broadcasting Companies, Inc., 731 F.2d 333, 338-39 and n. 5 (6th Cir. 1984). None of the cases, however, involves recording one's own conversations, as in this case.

Another issue on which there is no case law in this circuit is whether the strangely worded section 2517(3) is limited to legal proceedings brought by the government, as held in In re Motion to Unseal Electronic Surveillance Evidence, 990 F.2d 1015, 1018-20 (8th Cir. 1993) (en banc), and National Broadcasting Co. v.

United States Department of Justice, 735 F.2d 51 (2d Cir. 1984), although the wording seems merely a shorthand for the longer and unambiguous definition in the complementary section 2515 of proceedings as covering "any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof." See also section 2518(10)(a). Another issue on which authority is scanty is whether section 2517(3) is limited to trials and so excludes discovery, which would be a particularly strange limitation, though it was adopted (albeit in the briefest of discussions) in In re Motion to Unseal Electronic Surveillance Evidence, supra, 990 F.2d at 1020.

Regardless of how any of these issues is resolved, we think the plaintiffs are entitled to all the recordings, to use as they see fit except insofar as the district judge may exercise his power under the Federal Rules of Civil Procedure to limit, by protective order or otherwise, such disclosure of the contents of the recordings as may infringe the privacy of parties to the recorded conversations beyond what the plaintiffs require to prosecute their antitrust case effectively. Fed. R. Civ. P. 26(c); Gile v. United Airlines, Inc., 95 F.3d 492, 496 (7th Cir. 1996); Jepson, Inc. v. Makita Electric Works, Ltd., 30 F.3d 854, 858-59 (7th Cir. 1994); 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure sec. 2036 (2d ed. 1994).

Some states prohibit a person from recording his telephonic or other conversations without the other person's consent, but Title III does not, unless the person both is not acting under color of state law and has a criminal or tortious purpose. 18 U.S.C. secs. 2511(2)(c), (d). "While Title III . . . regulates electronic surveillance conducted without the consent of either party to a conversation, federal statutes impose no restrictions on recording a conversation with the consent of one of the conversants." United States v. Caceres, supra, 440 U.S. at 750. (This is a little broad, in ignoring the exception in section 2511(d) for bad purpose.) If by virtue of sections 2511(2)(c) or (d) an interception is not prohibited by Title III, there are no Title III restrictions on its use. Section 2517(3) does not come into play and such questions as whether the section authorizes disclosure only in government proceedings and only at trial drop out; the meaning of "oral communications" also becomes moot.

That interceptions exempted by sections

2511(2)(c) or (d) are not subject to section 2517(3) is apparent from the structure of Title III. Section 2511(1) forbids the interception of covered communications (that is, oral, wire, or electronic) "except as otherwise specifically provided in [Title III]." There are two relevant sets of "otherwise specifically provid[ing]" provisions. One is in subsection 2 of section 2511 and includes, as we have been emphasizing, most conversations intercepted by (or with the consent of) one of the parties. The other exceptions in subsection 2 include pen registers, switchboard operators, marine distress signals, and foreign intelligence surveillance--a heterogeneous array. In each instance the excluded practice is described in its own subsection together with any exceptions to the exception, such as, in the case of section 2511(2)(d), for recording one's conversations for a criminal or tortious purpose. Each of the exception subsections in section 2511(2) is complete and self-contained. But then there is another set of provisions, sections 2516 to 2519, defining and implementing the key exception for interceptions pursuant to a warrant. It is in that cluster of sections that section 2517(3) resides. Its location indicates that it is limited to cases in which an otherwise unlawful interception is lawful by virtue of having been made pursuant to warrant; the surrounding provisions make clear that the "authorization" to which the subsection refers is judicial authorization, not exemption. See secs. 2516, 2518(9); Gelbard v. United States, 408 U.S. 41, 46 (1972); United States v. Cunningham, 113 F.3d 289, 293 (1st Cir. 1997). To exempt is not to authorize, though the effect may be the same. So if, as in the case of most interceptions of communications by or with the consent of a party, the interception does not require a warrant to be lawful, Title III does not restrict its use.

The courts (including our own) have repeatedly held this in civil suits under Title III, Thomas v. Pearl, 998 F.2d 447, 451-53 (7th Cir. 1993); Griggs-Ryan v. Smith, 904 F.2d 112, 119 (1st Cir. 1990); Smith v. Cincinnati Post & Times-Star, 475 F.2d 740 (6th Cir. 1973) (per curiam); Meredith v. Gavin, 446 F.2d 794, 799 (8th Cir. 1971)-- which the present case is. Section 2511 exempts the conversations covered by it from the entirety of Title III. "Since . . . the interception in the case was not obtained in violation of the Act, its subsequent use and disclosure was not a violation of the Act." Id.; see also Obron Atlantic Corp. v. Barr, 990 F.2d 861, 863-64 (6th Cir. 1993); Leitman v. McAusland, 934 F.2d 46, 50 (4th Cir. 1991); United States v. Shields, 675 F.2d 1152, 1157 n. 2 (11th Cir. 1982); United States v. Howell, 664 F.2d 101, 105 (5th Cir.

1981); United States v. Head, 586 F.2d 508, 513 (5th Cir. 1978). As the case last cited put it, "18 U.S.C. sec. 2511(2)(d) exempts from the operation of the entire chapter, of which section 2518 is a part, consensual recordings such as made here." Id. (emphasis added). It is true that some cases assume that section 2517(3) applies to conversations exempted by sections 2511(2)(c) or (d), but they are cases in which the court found that the requirements of section 2517(3) had been met, so there was no occasion to consider whether, had they not been met, it would have made any difference, since the conversations were exempt. See United States v. Little, 753 F.2d 1420, 1435 (9th Cir. 1984); United States v. Haimowitz, 725 F.2d 1561, 1582 (11th Cir. 1984); United States v. Armocida, 515 F.2d 49, 52 (3d Cir. 1975); United States v. Bishton, 463 F.2d 887, 892 (D.C. Cir. 1972) (per curiam); see also United States v. Clegg, 509 F.2d 605, 612-13 (5th Cir. 1975).

To subject interceptions made lawful by sections 2511(2) (c) and (d) to section 2517(3) would have absurd consequences. It would mean that Whitacre had violated the statute by turning his recordings over to the FBI, since on the district court's reading of that section the only permissible disclosure of the contents of an interception made lawful by sections 2511(2)(c) or (d) is to play a tape of, or testify to, those contents in court. Section 2517(3) reflects a traditional sensitivity about wiretapping and related methods of electronically eavesdropping on other people's conversations. As is implicit (and sometimes explicit) in the cases that hold that such eavesdropping violates the Fourth Amendment but that recording your own conversations does not, there just is not the same sensitivity about the latter practice. Title III does not require a warrant for such recording or regulate its use in any way. The matter has been left to the states, except for the flat prohibition of consensual recording for improper purposes.

So if Whitacre's recordings were made lawful by either of these subsections, Title III does not restrict their use by the plaintiffs. It is clear that they were. When the FBI agreed to Whitacre's suggestion that he make the recordings in order to gather evidence of price fixing, the FBI made him a government informant, and in then making the recordings in that role he was acting under color of law within the meaning of section 2511(2)(c). Thomas v. Pearl, supra, 998 F.2d at 449-51; Berger v. Hanlon, 129 F.3d 505, 516 (9th Cir. 1997), rev'd on other grounds, 526 U.S. 808, relevant part of opinion reaffirmed, 188 F.3d 1155 (9th Cir. 1999); Obron Atlantic Corp. v.

Barr, supra, 990 F.2d at 864-65; United States v. Haimowitz, supra, 725 F.2d at 1581-82; United States v. Shields, supra, 675 F.2d at 1156-57. (Obron and Haimowitz are factually indistinguishable from the present case.)

And if this is wrong, it makes no difference; it just puts Whitacre under subsection 2511(2)(d). Desnick v. American Broadcasting Cos., 44 F.3d 1345, 1353 (7th Cir. 1995); United States v. Zarnes, 33 F.3d 1454, 1469 (7th Cir. 1994); United States v. Cassiere, 4 F.3d 1006, 1021 (1st Cir. 1993); United States v. Dale, 991 F.2d 819, 841 (D.C. Cir. 1993). He would not be within the exception to that subsection for recording for a criminal or tortious purpose, because a purpose of gathering evidence of a violation of law is not criminal or tortious. E.g., United States v. Zarnes, supra, 33 F.3d 1454, 1469 (7th Cir. 1994); By-Prod Corp. v. Armen-Berry Co., 668 F.2d 956, 959 (7th Cir. 1982); United States v. Dale, supra, 991 F.2d at 841; United States v. Ruppel, 666 F.2d 261, 271 (5th Cir. 1982); 1 Carr, supra, sec. 3.5(b), p. 3-112. It is the opposite. True, his motive in making the recordings may have been criminal or tortious (or more likely both)--to elude detection of his fraud against ADM by becoming a valued FBI informant and good-guy whistleblower. But when the law speaks of recording conversations with a criminal or tortious purpose, it has, we think, regard for the intended use of the recordings. There was nothing of that here. It was not as if Whitacre were going to use the recordings to blackmail Randall or extort money from ADM. He was going to give them to the FBI for use in evidence, a clearly lawful purpose, as the cases we have cited make clear. To repeat, so far as what was recorded was concerned, the intent was to collect evidence of antitrust violations, not evidence that might be used for an improper purpose. The recordings were no more unlawful than an arrest would be by a police officer who wanted to demonstrate zeal in the performance of his duties in the hope that it would shield him from prosecution for embezzling funds of the police department.

The judgment of the district court is modified to eliminate the restriction that the court placed on the use of the recordings of the wire communications by the plaintiffs, though without prejudice to the judge's considering whether to impose a protective order under Fed. R. Civ. P. 26(c). As so modified, the judgment is

Affirmed.