**UNITED STATES of America**

v.

**Donte HAMMOND.**

**No. Crim CCB–01–0004.**

United States District Court,
D. Maryland.

June 12, 2001.

Jane M. Erisman, Lynne A. Battaglia, U.S. Atty's Office, Baltimore, MD, for US.

Joshua R. Treem,Schulman, Treem, Kaminkow & Gilden, Gary W. Christopher, Federal Public Defender, Baltimore, M, for Defendant.

Donald H. Feige, Baltimore, MD, for Defendant.

### MEMORANDUM

BLAKE, District Judge.

Following his conviction for possession of a handgun by a convicted felon, defendant Donte Hammond was incarcerated at FCI, Fort Dix, New Jersey. In August 2000, the Fourth Circuit vacated Mr. Hammond's sentence and remanded the case for an additional suppression hearing. *United States v. Hammond*, 229 F.3d 1144, 2000 WL 1139611 (4th Cir. Aug.11, 2000). In October 2000, a new witness, Queen Tynes, came forward and offered to testify at the second suppression hearing in support of Mr. Hammond's version of the events on the night of his arrest. (Govt.'s Opp'n at 2.) Government counsel became suspicious of Ms. Tynes and investigated her connection to Mr. Hammond. (*Id.*) As part of this investigation, the government obtained a subpoena for recordings of telephone calls made by Mr. Hammond during his incarceration. The recordings were made as part of routine monitoring undertaken by the Bureau of Prisons ("BOP") on all personal calls placed by inmates on prison telephones. (*See* 28 C.F.R. 540.102; Govt.'s Opp'n, Ex. 2, Richardson Decl.)

Mr. Hammond has been indicted on 11 counts of witness tampering and obstruction of justice related to his efforts to secure testimony from Ms. Tynes and several other witnesses. In the current motion, he seeks suppression of the recorded telephone conversations. Specifically, Mr. Hammond argues that the recordings should be suppressed because the government did not comply with the requirements of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510, *et seq.* ("Title III").

With certain limited exceptions, Title III prohibits the unauthorized interception of "any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). Thus, "[i]t protects an individual from all forms of wiretapping except when the statute specifically provides otherwise." *Abraham v. County of Greenville*, 237 F.3d 386, 389 (4th Cir.2001). Those protections apply to prisoners and prison monitoring. *See, e.g., United States v. Amen*, 831 F.2d 373, 378 (2d Cir.1987). Therefore, the recordings were obtained legally only if one of the statutory exceptions to the prohibition applies. The government argues that two of the specified exceptions render its use of the recordings proper in this case. The court agrees.

First, the government argues that the law enforcement exception validates its use of the recordings. That exception permits recordings made "by an investigative or law enforcement officer in the ordinary course of his duties." 18 U.S.C. § 2510(5)(a)(ii). In an unpublished opinion, the Fourth Circuit found that routine recordings made by BOP personnel of inmates' personal calls are covered by the law enforcement exception. *See United States v. Bagguley*, 838 F.2d 468, 1987 WL 35045, *4–5 (4th Cir. Dec.22, 1987). Several other circuit courts have echoed this result. *See United States v. Van Poyck*,

77 F.3d 285, 291–92 (9th Cir.1996); *United States v. Sababu,* 891 F.2d 1308, 1328–29 (7th Cir.1989); *United States v. Paul,* 614 F.2d 115, 117 (6th Cir.1980); *see also Crooker v. United States Department of Justice,* 497 F.Supp. 500, 503–04 (D.Conn. 1980) (concluding that monitoring of personal calls fell within the exception but that monitoring of calls to attorneys did not). *See also Abraham,* 237 F.3d at 391 ("We do not impugn the County's need to monitor for law enforcement purposes calls relating to Detention Center inmates and employees."). This court agrees with the reasoning in those opinions and concludes, therefore, that the law enforcement exception justified the BOP in recording Mr. Hammond's conversations.

Similarly, the government contends that Mr. Hammond consented to having his conversations recorded. 18 U.S.C. § 2511(2)(c) provides that

[i]t shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where ... one of the parties to the communication has given prior consent to such interception.

"The legislative history shows that Congress intended the consent requirement to be construed broadly." *Amen,* 831 F.2d at 378.[1] In this case, Mr. Hammond acknowledged receipt of an "Admission and Orientation Handbook" which states that all telephone calls, except those to his attorneys, were subject to monitoring, (Govt.'s Opp'n., Ex. 3; *id.,* Ex. 4 at 24), signed a form entitled "Acknowledgments of Inmate" which states that "[a]n inmate's use of institutional telephones constitutes consent" to monitoring, *(id.,* Ex. 5), received a "Lesson Plan" that informed him

that all calls were monitored, *(id.,* Ex. 6 at 7), was informed of the telephone procedures when he was admitted, *(id.,* Ex. 7), and received a copy of the "FCI McKean Inmate Information Handbook" which states that the telephones "are subject to monitoring and recording," *(id.,* Ex. 8 at 7). Further, notices were posted near all inmate telephones. *(Id.,* Ex. 10, Aleshire Decl. ¶¶ 3–5.) Those notices informed the inmates that all conversations on that telephone were subject to monitoring and that "use of th[e] telephone constitutes consent to this monitoring." *(Id.,* Ex. 9.)

■ Under similar circumstances, several courts have concluded that inmates consented to having their conversations recorded. *See United States v. Footman,* 215 F.3d 145, 154–56 (1st Cir.2000); *United States v. Workman,* 80 F.3d 688, 693 (2d Cir.1996); *Van Poyck,* 77 F.3d at 292; *Amen,* 831 F.2d at 379. *But see Crooker,* 497 F.Supp. at 503. This court agrees with that conclusion and finds, therefore, that Mr. Hammond consented to having his personal calls recorded by the BOP.

Thus, the court concludes that the BOP was permitted to record Mr. Hammond's conversations under both the law enforcement and consent exceptions to Title III. Mr. Hammond's counsel agrees that both exceptions are applicable to the BOP but contends that this determination should not end the inquiry. He argues that, even if the exceptions apply to the BOP's practice of recording inmates' conversations, they did not permit the FBI to "intercept" those recordings by receiving and listening to them after they were made by the BOP. (Def.'s Reply at 3–5.)

---

**1.** "The Senate Report specifically says in relation to section 2511(2)(c): 'Consent may be expressed or implied. Surveillance devices in banks or apartment houses for institutional or personal protection would be impliedly consented to.'" *Amen,* 831 F.2d at 378 (quoting S.Rep. No. 1097, *reprinted in* 1968 U.S.Code Cong. & Admin.News 2112, 2182).

■ Mr. Hammond has not provided any precedent to support this contention, and the court disagrees. Indeed, the court finds persuasive the Seventh Circuit's reasoning in *In re High Fructose Corn Syrup Litigation*, 216 F.3d 621, 625 (7th Cir.2000) (concluding that "Section 2511 exempts the conversations covered by it from the *entirety* of Title III") (emphasis in original). Although that case only dealt specifically with the consent exception, the court finds no reason that the same rationale should not extend to the law enforcement exception.[2]

Moreover, the text of that exception supports this conclusion. The statute defines "intercept" to mean "the aural or other acquisition of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(a)(4). § 2510(5) then defines "electronic, mechanical, or other device" to include those "which can be used to intercept a wire, oral, or electronic communication *other than* ... [equipment] being used ... by an investigative or law enforcement officer in the ordinary course of his duties." 18 U.S.C. § 2510(5)(a)(ii) (emphasis added). Thus, if the recordings made by BOP are covered by the law enforcement exception, they were not made by an "electronic, mechanical, or other device," and, therefore, do not fall within the meaning of the term "intercept" as defined in the statute.

Thus, the court agrees that, in this case, because the recording "is not prohibited by Title III, there are *no* Title III restrictions on its use." *In re High Fructose*, 216 F.3d at 624 (emphasis in original).[3] Accordingly, the court's conclusion that the BOP was entitled to record Mr. Hammond's telephone conversations under both the law enforcement and consent exceptions renders his attempt to invoke additional protection under Title III unavailing.[4]

2. Neither party has presented any argument surrounding the applicability of § 2517(1), which permits "[a]n investigative or law enforcement officer" to disclose recorded information "to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure." 18 U.S.C. § 2517(1). The court notes, however, that to the extent Mr. Hammond challenges the illegal disclosure of the communications, as opposed to their interception, suppression likely is not a proper remedy. *See, e.g., United States v. Williams*, 124 F.3d 411, 426 (3d Cir.1997) (stating that suppression only applies to unlawful interceptions and that a civil remedy is available for illegal disclosures); *United States v. Barnes*, 47 F.3d 963, 965 (8th Cir.1995) ("The statute ... does not provide for suppression as a remedy for illegal disclosure.").

3. Mr. Hammond's reliance on *Amati v. City of Woodstock*, 176 F.3d 952 (7th Cir.1999), is misplaced. That case explained the parameters of the law enforcement exception. Specifically, it held that the "ordinary course" of an investigative officer's duties "refer[s] to routine noninvestigative recording of telephone conversations," as opposed to recordings made pursuant to a specific investigation. *Id.* at 955. Thus, the case supports the contention that the BOP was permitted to record Mr. Hammond's telephone conversations under the law enforcement exception. It does not, however, stand for the proposition that an additional Title III warrant was required before the federal investigators could listen to those tapes.

4. Similarly, the recordings did not violate Mr. Hammond's Fourth Amendment rights. *See, e.g., Workman*, 80 F.3d at 694 (citing *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971) for the proposition that the "Fourth Amendment does not prohibit use of recorded conversations where one party is complicit in the monitoring"); *Van Poyck*, 77 F.3d at 290–91 (finding that "no prisoner should reasonably expect privacy in his outbound telephone calls," and that, even if "the Fourth Amendment were triggered, institutional security concerns justify such recordings and render them reasonable for Fourth Amendment purposes"). Through counsel,

The motion to suppress, therefore, will be denied. A separate Order follows.

Mr. Hammond agreed with this point at oral     argument.