PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

MICHAEL B. ABRAHAM; SHIRLEY B.
KEATON; DON HENSLEY; HARRY H.
NELSON; MILDRED J. STOKES,
individually and on behalf of all
others similarly situated,
<u>Plaintiffs-Appellees,</u>

v.

COUNTY OF GREENVILLE, South
Carolina,
<u>Defendant-Appellant,</u>

and

PERRY EICHOR; JAMES E. MCDONALD;
JAMES M. DORRIETY; DAVID WALKER,
<u>Defendants.</u>

No. 00-1150

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
G. Ross Anderson, Jr., District Judge.
(CA-98-3201-6-13)

Argued: November 2, 2000

Decided: January 10, 2001

Before WILKINSON, Chief Judge, and WILKINS and
MOTZ, Circuit Judges.

_____

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Wilkins and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Brent Overton Edgar Clinkscale, WOMBLE, CARLYLE, SANDRIDGE & RICE, Greenville, South Carolina, for Appellant. James Edward Bradley, WILSON, MOORE, TAYLOR & O'DAY, West Columbia, South Carolina, for Appellees. **ON BRIEF:** Jacquelyn D. Austin, Riche T. McKnight, WOMBLE, CARLYLE, SANDRIDGE & RICE, Greenville, South Carolina; Boyd B. Nicholson, Jr., HAYNSWORTH, MARION, MCKAY & GUERARD, L.L.P., Greenville, South Carolina, for Appellant. S. Jahue Moore, David L. Thomas, WILSON, MOORE, TAYLOR & O'DAY, West Columbia, South Carolina, for Appellees.

_____

**OPINION**

WILKINSON, Chief Judge:

Several state court judges brought suit against the County of Greenville, South Carolina, under the federal wiretapping statute (Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 et seq.). Plaintiffs allege that the County illegally recorded the telephone calls they made from their offices in the County's Detention Center. Greenville County argues that its conduct was excused by the "law enforcement exception" to Title III, which permits wiretapping conducted by an "investigative or law enforcement officer in the ordinary course of his duties." 18 U.S.C. § 2510(5)(a)(ii). The district court rejected this argument as a matter of law. Because the County did not record the judges' phone conversations in the ordinary course of its law enforcement duties, and because the district court otherwise acted within its discretion, we affirm the judgment in favor of plaintiffs.

I.

In 1994, Greenville County, South Carolina completed construction on its new Detention Center. The Detention Center contained a jail, visitation facilities, and offices for law enforcement and administrative personnel. A separate section of the Detention Center con-

2

tained offices and courtroom facilities for city and county judges. This area was known as the Judicial Corridor.

While building the new facility, the County installed a recording system in the Detention Center. The system recorded incoming and outgoing telephone calls, seven days per week, twenty-four hours a day. According to the County, the system was intended to record the calls of the Detention Center's administrative personnel and the guards in the jail. The County contends that it installed the system for safety reasons and to ensure that Detention Center employees were properly carrying out their duties. In the past, private citizens had called the Detention Center complaining about prisoner mistreatment and other illegal conduct by the guards. The County believed that recording incoming calls would allow it to more fully investigate these complaints. Greenville County notified the guards and the administrative personnel in the Detention Center about the recording system. The County required these employees to sign consent forms acknowledging that their phone conversations might be monitored.

The system did not record all calls into the Detention Center. For instance, it excluded phones meant for use by inmates and attorneys. Nor did it record the pay phones in the Detention Center's lobby. However, the system did record the telephones in the Judicial Corridor. These included the lines used by the city and county judges. Whether the County intentionally or mistakenly recorded the judges was vigorously disputed at trial. Whatever the reason, it is clear that Greenville County never notified the judges that their calls were being recorded. In early 1998, the County installed a new recording system at the Detention Center. Again, this system recorded telephones in the Judicial Corridor.

In August 1998, Michael B. Abraham, a City Administrative Judge, began to suspect that his phone in the Judicial Corridor was wiretapped. On September 3, 1998, James McDonald, the jail administrator, confirmed Abraham's suspicions. McDonald informed Abraham that it was not possible for the County to remove the telephone lines in the Judicial Corridor from the recording system. According to McDonald, the recording system was attached to a single trunk line. Since the judges' extensions were part of that trunk line, they could not be individually removed from the system. On September

3

30, 1998, Greenville County deactivated the Detention Center's entire recording system.

Abraham and several other judges subsequently brought suit against Greenville County and four individual defendants in state court under the federal wiretapping statute (Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 et seq.). The defendants removed the suit to federal district court. A jury trial then commenced. On October 5, 1999, the district court declared a mistrial after determining that Greenville County had committed discovery abuses. The district court ordered Greenville County to engage in additional depositions and other discovery. Subsequently, plaintiffs agreed to dismiss the individual defendants in the case.

At the new trial in November 1999, the jury awarded plaintiffs $276,660.00 in damages. Greenville County subsequently moved, pursuant to Fed. R. Civ. P. 50(b), 59(a), and 59(e), for either a judgment as a matter of law, a new trial, or a remittitur and an amendment to the judgment. On November 24, 1999, plaintiffs filed a petition for attorneys' fees and costs pursuant to 18 U.S.C. § 2520(b)(3). The district court denied Greenville County's motion in its entirety and granted plaintiffs' petition. Greenville County now appeals.

II.

A.

Title III of the Omnibus Crime Control and Safe Streets Act provides a civil remedy against any person who "intentionally intercepts" another person's wire, oral, or electronic communications. See 18 U.S.C. § 2520(a) & 18 U.S.C. § 2511(1)(a); see also Sanders v. Robert Bosch Corp., 38 F.3d 736, 739-40 (4th Cir. 1994). The term "intercept" means the acquisition of such communications through the use of any "electronic, mechanical, or other device." 18 U.S.C. § 2510(4). However, Title III creates a law enforcement exception by defining "electronic, mechanical, or other device" to exclude equipment "being used by . . . an investigative or law enforcement officer in the ordinary course of his duties." 18 U.S.C. § 2510(5)(a)(ii).

4

Protecting the privacy of individuals who use the specified means of communication "was an overriding congressional concern [in enacting Title III]." <u>Gelbard v. United States</u>, 408 U.S. 41, 48 (1972). Title III commands respect for conversational privacy by requiring resort to the same system of warrants and neutral and detached review that has historically been used to safeguard the integrity of the person and of property. <u>See</u> 18 U.S.C. § 2516 (requiring a warrant for electronic eavesdropping not within one of the statutory exclusions). Title III represents an attempt by Congress to establish a system of electronic surveillance subject to rigorous safeguards. It protects an individual from all forms of wiretapping except when the statute specifically provides otherwise.

B.

Greenville County claims that the law enforcement exception excuses its recording of plaintiffs' telephone calls. However, monitoring the judges' calls simply was not part of the "ordinary course" of the County's law enforcement duties. <u>See</u> 18 U.S.C. § 2510(5)(a)(ii).* The County did not have an established policy of monitoring plaintiffs' calls. Indeed, the County contends that it recorded the judges only by mistake. Likewise, several of the individuals responsible for the installation and maintenance of the recording system testified that they knew that it was wrong to record the judges. Furthermore, the County has not suggested that it had any valid, law-enforcement related reason to record the judges. The judges were not under investigation and they were not suspected of breaking any law in the past.

The County argues, however, that the pertinent question under the law enforcement exception is not whether the recorded conversations relate to the County's law enforcement duties, but whether the recording device itself is being used in the ordinary course of the County's duties. The County contends that it has satisfied the only relevant inquiry under the law enforcement exception: namely, it has shown that it installed the recording device in the Detention Center for a

_____

*For this reason, it is unnecessary to decide whether the county officials who installed the recording system were "investigative or law enforcement officer[s]" under the law enforcement exception. <u>See</u> 18 U.S.C. §§ 2510(5)(a)(ii) & 2510(7).

5

legitimate law enforcement purpose. The County maintains that the fact that the system innocently captured some additional conversations is irrelevant.

While the law enforcement exception is indeed generous in scope, the County's argument proves too much. The law enforcement exception does not authorize all conversations to be recorded by a wiretapping device so long as the device captured some conversations in the ordinary course of a law enforcement officer's duties. Rather, the law enforcement exception specifically focuses on whether the device is "being used . . . by an investigative or law enforcement officer in the ordinary course of his duties." 18 U.S.C. § 2510(5)(a)(ii) (emphasis added). Under the exception, some uses of the recording device are excused, while other uses are not. Thus, the incidental recording of guards' personal conversations on a prison's main telephone line would be covered by the exception, if the recording device was "being used" within the ordinary course of a prison warden's duties to record calls from the public into a prison. See Amati v. City of Woodstock, 176 F.3d 952, 955-56 (7th Cir. 1999).

This concept, however, is not a limitless one. As the district court noted, the courts "have considered different categories of phone calls recorded by a single recording system separately for application of the law enforcement exception." See, e.g., Crooker v. United States Dep't of Justice, 497 F. Supp. 500, 503-04 (D. Conn. 1980) (distinguishing between inmates' personal calls and inmates' calls to their attorneys). Such an approach is necessary to prevent the law enforcement exception from swallowing the rule. See Amati, 176 F.3d at 955 (rejecting an open-ended interpretation of the exception to prevent it from overtaking Congress' intent). Very often, judges, attorneys, and other administrators share the same facilities with law enforcement personnel. If the law enforcement exception looked only to the wiretapping device, then law enforcement agencies could record all of the telephone lines in a building so long as some lines were monitored in the ordinary course of the law enforcement officers' duties. This cannot be what Congress meant. The law enforcement exception may not be read to allow a single recording device to deconstruct the whole system of separation of powers and permit law enforcement officers to routinely record the daily conversations of judges who may sit in cases to which law enforcement is a party.

6

The County contends that such widespread wiretapping could be prevented by limiting the exception only to cases in which the additional calls were recorded in good faith. However, Title III provides no basis for a good faith addition to the law enforcement exception. It is not our place to create a good faith exception where one does not exist. See 18 U.S.C. § 2520(d) (creating certain good faith defenses for violations of the wiretapping statute). The Act puts the onus upon the wiretapper to ensure that his activities are appropriate. In this case, the County could have ensured that its system would not subject the judges' calls to surveillance. When the recording system was installed in 1994, a county official told the workers who were installing the system not to record the lines used by the prisoners or their attorneys. The same official also should have instructed the workers not to record the judges' lines. We cannot expand the scope of the law enforcement exception to cover the County's alleged good faith mistake.

It is important to note, however, that the questions of whether the law enforcement exception applies and whether the County "intentionally intercepted" the judges' communications are separate inquires. Our determination that the law enforcement exception lacks a good faith component would not prevent the County from arguing that it did not "intentionally intercept" these conversations as required by 18 U.S.C. § 2511(1)(a); see also Sanders v. Robert Bosch Corp., 38 F.3d 736, 742-43 (4th Cir. 1994) (holding that under the Federal Wiretap Act, civil liability only attaches to intentional interceptions not inadvertent ones). In fact, the County made precisely this argument. The jury simply did not believe that the County's recording of the judges was inadvertent.

Our holding is a narrow one. We do not impugn the County's need to monitor for law enforcement purposes calls relating to Detention Center inmates and employees. See Amati, 176 F.3d at 955-56 (law enforcement exception applies to detention center's recording of calls to and from police station which captured employees' personal calls); United States v. Van Poyck, 77 F.3d 285, 291-92 (9th Cir. 1996) (law enforcement exception applies to detention center's recording of telephone calls by inmates); United States v. Paul , 614 F.2d 115, 116-17 (6th Cir. 1980) (same). Likewise, we do not suggest that overhearing personal conversations while conducting legitimate wiretapping activ-

7

ities violates Title III. Such incidental overhearing is endemic to surveillance. See Amati, 176 F.3d at 956 ("That personal as well as official calls were made on the line is irrelevant; all employees make personal calls on company phones; if all the lines are taped, as is the ordinary practice of police departments, then the recording of personal as well as of official calls is within the ordinary course."). Rather, we hold simply that the County's recording of the judges was not a legitimate surveillance activity because it did not occur in the ordinary course of the County's law enforcement duties. The district court properly determined that the law enforcement exception did not apply as a matter of law.

III.

The County also asserts numerous challenges to the actions of the district court in connection with the trial.

A.

The County argues that the district court failed to give the proper instruction with regard to whether the County "intentionally intercepted" the judges' communications. See 18 U.S.C. § 2511(1)(a). The court instructed the jury:

> An act is done intentionally if it is done knowingly or purposefully. That is, an act is intentional if it is the conscious objective of the person to do the act or cause the result. An act is not intentional if it is the product of inadvertence or mistake. However, the defendant's motive is not relevant and the defendant needs not to have intended the precise results of its conduct or have known its conduct violated the law.

The County argues that the district court's instruction failed to make clear that conversations recorded inadvertently cannot serve as the basis for an action under Title III. In its 1986 amendments, Congress changed the state of mind requirement in section 2511 from "willfully" to "intentionally." The County asserts Congress did so in order to avoid liability in cases such as this -- namely, where the County

8

willfully recorded conversations in the Detention Center, but did not specifically intend to record plaintiffs' conversations.

We do not think that the district court's instruction was improper. The court's instruction was consistent with Fourth Circuit caselaw as announced in Sanders v. Robert Bosch Corp., 38 F.3d 736 (4th Cir. 1994). Sanders noted that after the 1986 amendments, section 2511 now requires "that interceptions be intentional before liability attaches, thereby excluding inadvertent interceptions." Sanders, 38 F.3d at 742-43 (internal citations omitted). Consistent with Sanders, the district court instructed the jury that "an act is not intentional if it is the product of inadvertence or mistake."

The County had the opportunity to argue at trial that it did not possess the requisite intent. The jury did not accept this argument. Indeed, plaintiffs presented ample circumstantial evidence to convince the jury that the County intentionally recorded plaintiffs' lines. For instance, plaintiffs produced a confidential memorandum dated June 8, 1995, from Perry Eichor, the county official who decided to install the recording system, to the County Administrator. In this memorandum, Eichor reported that the County might be"inadvertently `eavesdrop[ping]' on other members of the Law Enforcement community." The memo further reported that all telephone lines in the 2000 series were being recorded. Since the judges' lines were part of the 2000 series, a jury could reasonably conclude that the County knew it was recording the judges well before Judge Abraham raised the issue in 1998.

B.

Next, Greenville County contends that the district court erred in declaring a mistrial and ordering additional discovery. During the first trial, the district court determined that the County had not been forthcoming in producing relevant documents. The County had responded to plaintiffs' discovery requests with boilerplate objections asserting that numerous privileges applied. Although plaintiffs requested the County to list its specific objections and produce a privilege log, the County failed to do either. The County also did not produce any additional documents. For their part, plaintiffs never filed a motion to compel. The County contended that it had informed plaintiffs that it

9

possessed additional documents, which plaintiffs' counsel was free to examine. Plaintiffs' counsel countered that the County led them to believe that it had already produced all relevant documents. The district court declared a mistrial and ordered Greenville County to engage in additional depositions and other discovery. The court stated that even if the County did not intentionally impede the discovery process, the court would have granted a mistrial because of the lack of adequate discovery.

The County contends that this was error and it therefore is entitled to a new trial. We disagree. The County did not make a timely objection to the court's declaration of mistrial or its ordering of additional discovery. Further, the district court acted within the bounds of its discretion when it concluded that the County's responses were so inadequate as to constitute no responses under Rule 37. See Fed. R. Civ. P. 37(a)(3) ("[A]n evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond."). Plaintiffs' request for documents was clear. The district court did not exceed its discretion in making sure that the County complied with its obligations under the discovery rules. Nor can we fault the district court for seeking full disclosure of documents. "Active participation by a district judge in trial proceedings . . . is in itself neither improper nor unfair." Desjardins v. Van Buren Community Hosp., 969 F.2d 1280, 1281 (1st Cir. 1992) (per curiam).

Indeed, the district court's belief that the County had not produced all relevant documents was prescient. After the mistrial, the County produced additional documents that were crucial to plaintiffs' case. The most important document was the confidential 1995 memorandum in which Eichor admitted that the County might be "inadvertently `eavesdrop[ping]'" on the 2000 series of extensions, which included the judges' lines. Thus, we conclude that the district court did not abuse its discretion in ordering a new trial.

C.

Finally, Greenville County contests the district court's ruling on damages and attorneys' fees. For violations of Title III, plaintiffs may recover the greater of either their actual damages or their statutory damages. See 18 U.S.C. § 2520(c)(2). Section 2520(c)(2) provides for

10

statutory damages of either $100 a day for each day of violation or $10,000, whichever is greater. Plaintiffs presented evidence that they used their phones for approximately 4,601 days while the phones were being wiretapped. Thus, there was a factual basis to award $460,100 in statutory damages. The jury awarded $276,660 in damages.

Greenville County argues that the district court's jury instruction on statutory damages erroneously mentioned deterrence, thereby permitting the jury to award punitive damages to the plaintiffs. The district court's instruction stated that:

> The purpose of statutory damages is to compensate the judges for intangible losses from invasion of privacy such as shock, humiliation, embarrassment, shame, mental anguish, emotional suffering, and depression. Statutory damages also serve to deter defendants such as Greenville County from engaging in such invasions of privacy.

A jury charge must be construed in light of the whole record. See Spell v. McDaniel, 824 F.2d 1380, 1395 (4th Cir. 1987). A judgment will be reversed for error in jury instructions "only if the error is determined to have been prejudicial, based on a review of the record as a whole." Wellington v. Daniels, 717 F.2d 932, 938 (4th Cir. 1983). The district court's instruction did not prejudice the County. First, the court instructed the jury that it could award no damages if it found a de minimis violation. Second, during its deliberations, the jury inquired whether it could award less than the damages the district court had mentioned in its instruction. The court informed the jury that it could award a percentage of the damages. Finally, the jury awarded plaintiffs significantly less than the statutory damages plaintiffs were seeking. The combination of these factors show that the district court's instruction did not prejudice the County.

Finally, the County contends that the district court erred in awarding plaintiffs attorneys' fees and costs incurred after the court declared a mistrial because the mistrial was unwarranted. As discussed above, the district court's decision to declare a mistrial was within its discretion. Plaintiffs prevailed in the second trial. A prevailing party is entitled to reasonable attorneys' fees under the Act. See

11

18 U.S.C. § 2520(b)(3). For this reason, the court properly awarded the plaintiffs their attorneys' fees and costs.

IV.

The ordinary course of law enforcement's duties does not include recording the conversations of state judicial officers. The district court recognized this essential fact, and for the foregoing reasons, the judgment is

AFFIRMED.