UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MICHAEL M. CHRISTOVICH; LINDA H. CHRISTOVICH,

　　　　　　*Plaintiffs-Appellants,*

　　　　　　v.

DEREK PIERCE,

　　　　　　*Defendant-Appellee,*

BOSTON OLD COLONY INSURANCE COMPANY,

　　　　　　*Respondent-Appellee,*

　　　　　　and

CLAYTON HOMES OF DELAWARE, INCORPORATED,

　　　　　　*Defendant.*

No. 02-1363

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, Senior District Judge.
(CA-98-487)

Argued: January 22, 2003

Decided: March 10, 2003

Before WILLIAMS and MICHAEL, Circuit Judges, and
Morton I. GREENBERG, Senior Circuit Judge of the United States
Court of Appeals for the Third Circuit, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Richard James Serpe, GLASSER & GLASSER, P.L.C., Norfolk, Virginia, for Appellants. Melody Gunter Foster, KAL-BAUGH, PFUND & MESSSERSMITH, P.C., Roanoke, Virginia, for Appellee. **ON BRIEF:** Harvey J. Lewis, LEWIS, KULLMAN & STERBCOW, New Orleans, Louisiana, for Appellants. John Weber, III, KALBAUGH, PFUND & MESSSERSMITH, P.C., Roanoke, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Michael and Linda Christovich invoked diversity jurisdiction to sue Derek Pierce and his employer, Clayton Homes, Inc., in federal court. The Christoviches alleged that Pierce injured them by running them off the road in a vehicle mishap. The Christoviches settled their claim against Clayton Homes prior to trial. They now appeal the jury verdict and judgment entered in favor of Pierce, alleging various trial errors. For the reasons that follow, we affirm.

### I.

On the day of the accident, September 19, 1998, Michael Christovich and his wife, Linda, left The Greenbrier, a resort in White Sulphur Springs, West Virginia. They were driving to Roanoke, Virginia, to catch a flight back to their home in New Orleans. Michael Christovich was driving a rental car; Linda was in the passenger seat. According to the Christoviches, they left The Greenbrier at approximately 8 a.m. in order to catch their 10:40 a.m. flight. At the time of the accident, the Christoviches were traveling on U.S. Highway 220, a two-lane road that runs north and south. At approximately 9 a.m.,

the Christoviches were traveling south, within the 55-mph speed limit, and approaching a hill. According to the Christoviches, as they approached the hill, they saw a dark sedan, traveling north, come over the hill and into the southbound lane. Michael Christovich swerved to his right to avoid a collision and lost control of his car. The road at the site of the accident has almost no shoulder, and the roadbed drops off sharply on both sides. The Christovich car spun around, crossed the northbound lane, flew across a ditch, and landed upside down with the engine still running. Linda Christovich was flung from the car; Michael Christovich was stuck in the car, hanging upside down by his seatbelt and shoulder harness. Linda Christovich, who was relatively unscathed, returned to the car and turned off the ignition but was not able to extricate her husband. According to the Christoviches, two never-identified good Samaritans arrived and helped get Michael Christovich out of the car. Virginia State Trooper Malcolm Austin arrived on the scene as did an ambulance. It was later determined that Michael Christovich had a broken shoulder, which required surgery and a lengthy recovery.

The trial essentially boiled down to a credibility contest between the Christoviches and Pierce, who maintained that his vehicle never entered the Christoviches' lane. Rather, according to Pierce, the Christoviches' vehicle veered over into Pierce's lane but Pierce managed to avoid a collision. When Pierce saw in his rearview mirror that something had happened to the car he had just passed, he turned around and drove back to the scene. Pierce testified that he was the one who helped Michael Christovich out of the car, and he testified to details of a conversation he allegedly had with Michael Christovich while waiting for the ambulance. The Christoviches denied ever seeing Pierce at the scene. Trooper Austin testified, however, that Pierce was on the scene, that Pierce acknowledged that he was a witness to the accident, and that Pierce gave the officer his name. At the time Pierce could not remember his address because he had just moved to a new home in North Carolina. There was disputed testimony as to whether Pierce showed the officer his driver's license or whether he gave the officer a business card. In any event, enough information was provided so that the Christoviches could eventually identify Pierce and serve him with process. Trooper Austin testified that he asked Pierce not to leave the scene but that when he went to interview Pierce further, he discovered that Pierce had left. Trooper Austin said

it "never crossed [his] mind" that Pierce had been the cause of the accident, and no charges were filed against Pierce. There was an inconsistency in Linda Christovich's account of the accident. She originally told Trooper Austin that she was asleep at the time of the accident; later that morning, after sitting alone with her husband in the ambulance, she told Austin that a dark sedan had swerved into their lane. At trial she attributed the inconsistency to her shocked state during the first interview. There was also some confusion about when the Christoviches checked out of The Greenbrier. They testified that it was at 8 a.m., but hotel records showed that a long distance phone call was made from their room at 8:37 a.m. The jury returned a verdict in favor of Pierce, and the Christoviches appeal from the judgment.

## II.

The Christoviches first challenge several of the district court's evidentiary rulings. We review these rulings for abuse of discretion, *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 194 (4th Cir. 2000), and prejudice. Fed. R. Evid. 103(a). We will set out all of the contested rulings and then evaluate them in turn.

The Christoviches requested, through a motion in limine, a pretrial ruling on two evidentiary issues. First, they sought to admit, under Fed. R. Evid. 609(a)(2), Pierce's two prior felony convictions, one for bank fraud and one for filing a false financial statement. Second, the Christoviches also sought, under Fed. R. Evid. 608(b), to cross-examine Pierce about specific instances of prior untruthfulness, specifically, that he was fired by his former employer for, among other things, forging a signature to receive a sales commission, fabricating stories, and stealing lumber and carpeting from his employer. The district court did not rule on the motion prior to trial.

At trial when Pierce was questioned about his prior convictions, he responded that he had pled guilty to felony bank fraud. The district court prevented the Christoviches' lawyer from eliciting from Pierce the name of the offense for which he received a second felony conviction, though the jury clearly heard that there had been a second conviction. The district court also barred the Christoviches' lawyer from inquiring into the details of either of the two felony convictions. The court further informed the jury that the convictions should be consid-

ered only to assess Pierce's credibility. The Christoviches' lawyer emphasized Pierce's felony bank fraud conviction in his closing argument. Among other things, the lawyer asked the jury to consider whether it would believe "a lawyer who has a great deal personally at stake in telling the truth . . . or, this convicted bank fraud felon." The Christoviches were also able to attack Pierce's credibility through the testimony of Jim Lunsford, a witness from Pierce's prior place of employment. Lunsford testified that Pierce had a poor reputation for truthfulness. The district court did not, however, permit the Christoviches to cross-examine Pierce about the specific instances of his prior untruthfulness.

The Christoviches also sought to introduce evidence at trial of Michael Christovich's reputation for truthfulness. The district court permitted Michael Christovich to testify about his academic achievements, but prevented him from testifying about his obligation as a lawyer to abide by ethical rules. Linda Christovich testified about her husband's civic activities in the community, and even told the jury that "Michael's looked up to in the community." The district court prevented Linda Christovich, however, from answering her lawyer's question about her "husband's reputation for truth and veracity."

## A.

The Christoviches contend that the district court erred in preventing their lawyer from inquiring into the nature of Pierce's second felony conviction. We agree that the district court erred in this regard, but we conclude that the error was harmless. Fed. R. Evid. 609(b) provides that "evidence that any witness has been convicted of a crime *shall* be admitted if it involved dishonesty or false statement, regardless of the punishment." (emphasis added). It is well established that convictions falling under Rule 609(b) are automatically admissible for purposes of attacking a witness's credibility and that a district court has no discretion to exclude them. *United States v. Cunningham*, 638 F.2d 696, 698-99 (4th Cir. 1981). Pierce's felony convictions for bank fraud and for filing a false financial statement clearly fall under Rule 609(b). As a result, the district court was required to admit evidence that Pierce had been convicted not only for bank fraud, but also for filing a false financial statement. Thus, the district court erred in preventing the Christoviches from eliciting from Pierce

that his second conviction was for filing a false statement. We conclude, however, that this error was harmless because the Christoviches cannot show prejudice. The jury was clearly made aware that Pierce had two felony convictions on his record, at least one of which was for a crime involving dishonesty. The jury also heard a witness from Pierce's former place of employment testify that Pierce had a bad reputation for truthfulness. The jury further heard some of Pierce's testimony contradicted by that of Michael and Linda Christovich and by Trooper Austin. And finally, the jury heard Pierce's felony bank fraud conviction emphasized in the Christoviches' closing argument. In light of the foregoing, we conclude that the district court's failure to require Pierce to name the second felony offense does not constitute reversible error.

To the extent that the district court precluded the Christoviches from inquiring into the details of either felony conviction, no error was committed. We have said that while counsel may impeach a witness by informing the jury of the date, offense, and punishment related to a conviction, counsel is "not permitted to probe in depth the nature of the felonies, when they occurred, and their details." *United States v. Samuel*, 431 F.2d 610, 613 (4th Cir. 1970). *See also* 2 Handbook of Federal Evidence § 609.6 (5th ed.).

The Christoviches further argue that the district court erred when it informed the jury that Pierce's felony convictions could only be used to assess Pierce's credibility. The district court was right. Rule 609 explicitly provides that prior convictions may be admitted "[f]or the purpose of attacking the credibility of a witness." Fed. R. Evid. 609. *See also United States v. Weil*, 561 F.2d 1109, 1111 (4th Cir. 1977) (noting that the "sole purpose" for admitting prior convictions is to assess the credibility of the witness). Thus, the district court's explanation to the jury that the felony convictions were admitted for assessing "the credibility of [Pierce's] testimony" was correct. The district court further instructed the jury that when considering the truthfulness of Pierce's testimony, the jury "can consider the fact that he's previously been convicted of a felony. That's all that comes in for." Again, that instruction was entirely appropriate. "When convictions are introduced for impeachment, it is appropriate to instruct the jury that a witness's prior conviction should be considered only to

assess the credibility of the witness." 4 Weinstein's Federal Evidence § 609.25, at 609-72 (2d ed. 2002).

To the extent that the Christoviches suggest that the district court improperly commented on the convictions to the jury, we disagree. The record reflects that the district court's comment did not compromise the appearance or reality of justice. *See Sit-Set, A.G. v. Universal Jet Exchange, Inc.*, 747 F.2d 921, 925 (4th Cir. 1984).

B.

The Christoviches also allege that the district court erred in prohibiting them from cross-examining Pierce about specific instances of prior untruthfulness. Fed. R. Evid. 608(b) provides that specific instances of conduct may "in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness . . . concerning the witness' character for truthfulness or untruthfulness." In determining whether to admit testimony under Rule 608(b), a district court must still conduct a Rule 403 balancing test and must exclude the testimony if its probative value is substantially outweighed by dangers of prejudice. *United States v. Leake*, 642 F.2d 715, 718 (4th Cir. 1981). The district court has broad discretion in this regard, but should weigh factors such as the importance of the witness's testimony, the relevance of the conduct to the witness's truthfulness, and the danger of prejudice, confusion, or delay. *Id.* at 719. A district court's Rule 608(b) ruling will be reversed only if "it is probable that the error could have affected the verdict reached by the particular jury in the particular circumstances." *United States v. Simpson*, 910 F.2d 154, 158 (4th Cir. 1990) (quotation omitted).

The Christoviches contend that it was prejudicial error not to allow inquiry into specific instances of Pierce's prior untruthfulness because the case centered largely on a credibility determination. We disagree. As the district court was well aware, the jury knew of Pierce's prior convictions, his bad reputation for truthfulness, and the discrepancies between his testimony and that of other witnesses. The district court's decision to exclude what would have been cumulative and unsubstantiated evidence of untruthfulness was a rational one. The Christoviches argue nonetheless that if the jury had been aware of these prior

instances of untruthfulness, the jury "might have disbelieved Pierce and reached a different verdict." Appellant's Br. at 24. Again, however, because the jury had before it other evidence attacking Pierce's credibility, we cannot say that if the jury had been aware of the excluded allegations of Pierce's prior untruthfulness, it is *probable* that the verdict could have been affected. *Leake*, 642 F.2d at 719. Accordingly, we conclude that the district court did not abuse its discretion in excluding evidence of the specific instances of prior Pierce's untruthfulness.

C.

Finally, the Christoviches argue that the district court erred when it failed to permit inquiry into Michael Christovich's reputation for truthfulness. Specifically, the Christoviches' lawyer sought to question Michael Christovich about the ethical rules he is required to follow as a member of the bar. The lawyer also sought to question Linda Christovich regarding her husband's reputation for truthfulness. For the reasons that follow, we conclude that the district court did not err in excluding this evidence.

Under Fed. R. Evid. 608(a), evidence of a witness's reputation for truthfulness may be introduced only after the witness's credibility has been attacked. "As a general rule a witness's credibility may not be rehabilitated unless it first has been challenged." *United States v. Henderson*, 717 F.2d 135, 137 (4th Cir. 1983). At the time the Christoviches sought to bolster Michael Christovich's credibility, his credibility had not been attacked. In fact, to the extent that his credibility was directly attacked at all, it was only when, during his cross-examination, he was questioned regarding the time he checked out of the hotel. Pierce's lawyer presented evidence that Christovich's statement that he left at 8 a.m. might have been incorrect because hotel records showed a phone call made from the room at 8:37. We doubt that such cross-examination qualifies as an attack on credibility that is sufficient to permit rehabilitation through character evidence. *Cf.* 4 Weinstein's Federal Evidence § 608.12[4][a], at 608-22 (5th ed. 2002) ("Most courts do not view contradiction of one witness's testimony by other witnesses as an attack on character."); *see also* Advisory Comm. Notes to Rule 608 (noting that opinion or reputation evidence regarding witness's untruthfulness or evidence of miscon-

duct qualify as an attack, while evidence in the form of contradiction does not necessarily qualify). Moreover, even if it was sufficient to permit rehabilitation and even if the district court erred in preventing the testimony, the Christoviches cannot demonstrate prejudice. Michael Christovich was permitted to testify on direct examination to various academic achievements, including service on Washington & Lee University's Honor Court, membership on the Tulane Law Review, and various other law school honors. He also testified that he was at The Greenbrier to be inducted into the International Academy of Trial Lawyers. Similarly, Linda Christovich testified about her husband's various civic activities. She testified that "Michael's looked up to in the community." Thus, the jury was certainly aware of Michael Christovich's general academic and professional success and his standing in the community. We cannot say that exclusion of any further evidence of a reputation for truthfulness constituted reversible error.

### III.

The Christoviches also argue on appeal that the district court erred when it added a jury instruction that had not been requested by either party and that was not disclosed to the parties before closing arguments. The Christoviches further contend that the instruction itself reflected the district court's bias in favor of the defendant. Challenges to jury instructions are reviewed for abuse of discretion. *Chaudry v. Gallerizzo*, 174 F.3d 394, 408 (4th Cir. 1999). "A judgment will be reversed for error in jury instructions only if the error is determined to have been prejudicial, based on a review of the record as a whole." *Abraham v. County of Greenville*, 237 F.3d 386, 393 (4th Cir. 2001) (internal quotation omitted).

Our case law does not say whether a district court is required to inform counsel of a sua sponte instruction prior to closing arguments. Fed. R. Civ. P. 51, which deals with jury instructions, is silent on this score. Rule 51 provides that parties may file written requests for instructions and that "[t]he court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury." Nothing is said about the court's obligations to inform counsel of *non-*requested instructions. Thus, it does not appear that the district court here erred in failing to inform counsel of its "innocent misrecollec-

tion" instruction. Even if such disclosure was required, the failure to disclose would be reversible only upon a showing of prejudice, *cf. United States v. Burgess*, 691 F.2d 1146, 1156 (4th Cir. 1982), which the Christoviches cannot demonstrate. The Christoviches' argument that the instruction is somehow biased against them is not persuasive. The full jury instruction was as follows:

> Inconsistencies or discrepancies in the testimony of a witness or between the testimony of different witnesses may or may not cause the jury to discredit such testimony. I would remind you that two (2) or more persons witnessing an incident or transaction may see and hear it different. An innocent misrecollection, just like the failure of recollection, is not an uncommon human experience. In weighing the effect of any discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail and whether the discrepancy results from innocent error or intentional falsehood.

The instruction pertains equally to both parties and makes sense in a case where the jury's determination essentially boils down to credibility determinations. In this case, there were discrepancies between the testimony of the Christoviches and Pierce, between Pierce and Trooper Austin, between Trooper Austin and Linda Christovich, and between the Christoviches and some hotel records. For instance, as the district court noted in response to the Christoviches' objection to this instruction, "there was evidence to the effect that [Linda Christovich] made one statement to the trooper and then later changed it. . . . I think there was—I think there is sufficient evidence to charge them on that point." If the Christoviches' argument is that the jury instruction suggested that Pierce innocently failed to recollect details, for example the documents he gave to Trooper Austin, then that argument applies equally to the Christoviches. The instruction could have suggested that Linda Christovich's inconsistent statements to Trooper Austin or Michael Christovich's possible misrecollection about the check-out time were the result of innocent error rather than intentional falsehood. Given the benign nature of the instruction, the Christoviches can hardly show prejudice. Accordingly, we conclude that the district court did not abuse its discretion in including the instruction.

## IV.

For all of the foregoing reasons, the judgment is

*AFFIRMED*.