Michael Alan **CROOKER** et al., Plaintiffs,

v.

**U. S. DEPARTMENT OF JUSTICE et al., Defendants.**

**Civ. No. B–80–146.**

United States District Court, D. Connecticut.

Sept. 22, 1980.

Michael Crooker, pro se.

Francis D. Burrascano, pro se.

Frank H. Santoro, Asst. U. S. Atty., New Haven, Conn., for defendants.

RULING ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

EGINTON, District Judge.

Plaintiffs, inmates at the Federal Correctional Institution ["FCI"] in Danbury, Connecticut, have brought this action pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510–20 ["Title III"], on behalf of themselves and a class consisting of "all others similarly situated at the [FCI]" to enjoin prison officials from routinely and randomly monitoring their personal and legal telephone calls. The matter is presently before the Court on defendants' motion for summary judgment.

In accordance with 28 C.F.R. §§ 540.-100–.105 and Policy Statement DAN 5264.1, the FCI has established and presently maintains guidelines for the use of institution telephones by inmates. Under these guide-

lines, inmates are permitted, subject to certain limitations and restrictions, to make unlimited long distance telephone calls. These calls are randomly and routinely monitored by FCI officials, a procedure specifically sanctioned by 28 C.F.R. § 540.101 and Policy Statement DAN 5264.1 ¶ 11. The stated purpose of this monitoring is "to preserve the security and orderly management of the institution and to protect the public." 28 C.F.R. § 540.101.

28 C.F.R. § 540.101 expressly provides that the warden "must provide notice to [an] inmate of the potential for monitoring where it exists." Officials at the FCI have attempted to comply with this requirement through the issuance and dissemination of Policy Statement DAN 5264.1 and the placement of stickers on or adjacent to institution telephones stating that calls from those telephones might be monitored. These stickers also contain a statement that "use of the institutional telephones constitutes consent to this monitoring." Although there is some question whether all inmates had actual notice of the monitoring capacity of the institution telephone system, it is clear that the telephone rules were posted and that the prison officials made good faith efforts to ensure that the inmates had reasonable notice that monitoring of telephone calls might occur.

28 C.F.R. § 540.101 also provides that prison officials "may not monitor an inmate's properly placed call to an attorney," and that the warden must notify "an inmate of the proper procedures to have an unmonitored telephone conversation with an attorney." On the record that has been developed to date, it appears that, until very recently, officials at the FCI had not adopted such procedures, and inmate/attorney telephone calls were routinely monitored in the same manner as all other calls. In apparent response to the instant suit, Policy Statement DAN 5264.1 was amended on May 28, 1980 to include a provision setting forth procedures whereby an inmate

would be able to have an unmonitored telephone conversation with an attorney. Policy Statement DAN 5264.1 ¶ 8.

Plaintiffs argue that the routine and random monitoring of their telephone calls by prison officials violates Title III, which provides a civil remedy when wire communications are unlawfully intercepted, disclosed, or used.[1] Defendants do not deny that they engage in the monitoring activities alleged by plaintiffs. Rather, they argue that Title III does not apply in the prison context, and that, even if it does, defendants come under one or more of the exclusions to the statute.

■ Defendants claim initially that Congress did not intend Title III to apply to monitoring of prison telephones. This argument ignores the plain language of the statute. By its express terms, Title III prohibits, with certain narrowly drawn exclusions, the unauthorized interception of "any wire or oral communication." 18 U.S.C. § 2511(1)(a). The statute contains no specific exclusion for monitoring prison telephones. Defendants nevertheless contend that the legislative history to Title III evinces Congress' intent that Title III not apply to prison monitoring. The Court finds no merit in such a contention. The *relevant* legislative history is plainly to the contrary. See S.Rep.No.1097, 90th Cong., 2d Sess., 2177–97, U.S.Code Cong. & Admin. News 1968, p. 2112. Moreover, the two courts that have considered the issue have both squarely rejected this argument. *United States v. Paul*, 614 F.2d 115, 116 n.2 (6th Cir. 1980); *Campiti v. Walonis*, 453 F.Supp. 819, 823 (D.Mass.1978), *aff'd*, 611 F.2d 387 (1st Cir. 1979).

■ 18 U.S.C. § 2511(2)(c) provides in relevant part that "[i]t shall not be unlawful under this chapter for a person . . . to intercept a wire . . . communication, where . . . one of the parties to the communication has given prior consent to such interception." Defendants' second claim is that

---

1. 18 U.S.C. § 2520 provides in pertinent part that:

Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil

cause of action, against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications.

since the FCI inmates knew or should have known of the telephone monitoring and because there is a justifiable need for such monitoring, plaintiffs have impliedly consented to it. This precise claim was raised in the *Campiti* case, *supra*, and the Court of Appeals for the First Circuit held that the mere fact that the plaintiff was in restrictive custody and knew or should have known that his telephone call would probably be monitored was not sufficient to establish consent. The court stated that "[t]o accept [the defendants'] theory of implied consent . . . would completely distort the plain words of section 2511(2)(c), legalizing an intercept where 'one of the parties . . . has given prior consent to such interception.' " *Id.* at 394. Similarly, in the present case, knowledge of the monitoring (assuming, *arguendo*, that the inmates had actual knowledge) and the existence of a justifiable need for such monitoring are clearly not sufficient to establish consent.

■ Defendants next contend that prison monitoring is permissible under 18 U.S.C. § 2510(5)(a)(ii) which excludes from the proscriptions of Title III the interception of communications over equipment used by an "investigative or law enforcement officer in the ordinary course of his duties."

18 U.S.C. § 2510(7) defines an investigative or law enforcement officer as one " . . . who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in [18 U.S.C. § 2516] . . . ." Defendants do not contend that they are specifically empowered by statute to conduct investigations of or make arrests for the offenses enumerated in section 2516. Indeed, it is clear that they may only make arrests for four offenses, none of which is set forth in section 2516. 18 U.S.C. § 3050. Despite the lack of specific statutory authorization, defendants argue that they are nevertheless empowered to conduct investigations of many of the offenses set forth in section 2516. They argue that the plenary

responsibility of the Bureau of Prisons for the management and .regulation of all federal penal institutions, *cf.* 18 U.S.C. § 4042, includes the responsibility to conduct investigations of such offenses as extortion or dealing in drugs (offenses enumerated in section 2516). Although defendants are unable to cite any authority for their position,[2] common sense dictates this result. It is beyond question that as a part of managing and regulating the day–to–day activities of a correctional institution, prison officials must be empowered to investigate potential criminal violations in order to preserve the security and orderly management of the institution; in fact, the Bureau of Prisons' regulations expressly provide specific procedures for investigating suspected criminal activity. 28 C.F.R. § 541.12(b). The Court finds, therefore, that defendants fall within the definition of "investigative or law enforcement officer[s]."

Having determined that defendants are investigative or law enforcement officers, the question remains whether they are engaging in monitoring activities "in the ordinary course of [their] duties." With respect to personal calls (i. e., calls to persons other than attorneys), the monitoring is authorized by and undertaken pursuant to a Bureau of Prisons' regulation (28 C.F.R. § 540.101) and a local FCI regulation (Policy Statement DAN 5264.1). These regulations are posted and the inmates have reasonable notice that monitoring of telephone conversations might occur. Moreover, there is no evidence in the record, nor any allegation in the complaint, that the monitoring of calls is anything but routine and random and for the sole purpose of ensuring the security and orderly management of the institution. Under these circumstances, the Court concludes that the telephone monitoring of personal calls is in the ordinary course of the prison officials' duties and is thus permissible under 18 U.S.C. § 2510(5)(a)(ii).[3]

---

2. In *United States v. Paul, supra*, the Court of Appeals for the Sixth Circuit assumed, without discussion, that a prison official is "an investigative or law enforcement officer" as that term is defined in section 2510(7). *Id.* at 117.

3. Although the claim is not raised by defendants, it would appear that section 2510(5)(a)(i)

■■ The practice, engaged in at least until very recently, of routinely and randomly monitoring inmate/attorney calls involves different considerations. 28 C.F.R. § 540.101 is explicit that properly placed calls to attorneys may not be monitored. Unfortunately, the FCI did not adopt written procedures whereby inmates could have unmonitored telephone conversations with attorneys until May 28, 1980, and inmate/attorney calls made prior to that date were routinely monitored. This routine monitoring of possibly confidential calls was not only unwarranted, it was in clear violation of the Bureau of Prisons' own regulations. As such, it cannot realistically be argued that such monitoring fell within the ordinary course of the prison officials' duties. However, because plaintiffs are seeking only injunctive and declaratory relief and because the recent amendment to Policy Statement DAN 5264.1 now provides procedures for unmonitored calls to attorneys, this aspect of plaintiffs' complaint is moot.[4]

■ Accordingly, defendants' motion for summary judgment is granted.[5]

It is So Ordered.

might provide an alternative basis for exclusion from the proscriptions of Title III.

4. In any event, there is a serious question whether injunctive or declaratory relief is even permissible under Title III. The civil remedy provision of Title III, 18 U.S.C. § 2520, provides solely for money damages. Moreover, the legislative history to Title III states that "[i]njunctive relief ... is not intended to be available." S.Rep.No.1097, *supra*, at 2196. *See Campiti v. Walonis, supra*, at 825.

5. Plaintiffs also argue that the activities alleged in the complaint are prohibited by the Connecticut wiretap statute, Conn.Gen.Stat. §§ 54–41a

*et seq.* Even ignoring the serious issue of abstention, *see Naylor v. Case & McGrath, Inc.*, 585 F.2d 557 (2d Cir. 1978), and the question of whether the statute is meant to apply to agents of the federal government as distinguished from those of the state, *see* Conn.Gen.Stat. § 54–41a(4), the Court concludes, in view of the fact that the Connecticut statute was patterned after, and, indeed, tracks in many respects, the federal statute, that the analysis set forth concerning the applicability of Title III, *supra*, applies with equal force to the Connecticut statute.