**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Donte HAMMOND, Defendant–
Appellant.**

**No. 01–4484.**

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 25, 2002.

Decided April 12, 2002.

---

190

**ARGUED:** Joshua R. Treem, Schulman, Treem, Kaminkow, Gilden & Ravenell, P.A., Baltimore, Maryland, for Appellant. Harvey Ellis Eisenberg, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Thomas M. DiBiagio, United States Attorney, Jane M. Erisman, Assistant United States Attorney, Baltimore, Maryland, for Appellee.

Before WIDENER and GREGORY, Circuit Judges, and Cynthia Holcomb HALL, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

Affirmed by published opinion. Senior Judge HALL wrote the opinion, in which Judge WIDENER and Judge GREGORY joined.

## OPINION

HALL, Senior Circuit Judge.

Defendant/appellant Donte Hammond appeals the district court's denial of his motion to suppress taped conversations in which Hammond allegedly tampered with a witness by inducing her to testify favorably on his behalf at an evidentiary hearing. The tapes were recorded by the Bureau of Prisons ("BOP") as part of its routine procedures while Hammond was incarcerated. The FBI obtained the tapes from the BOP by means of a subpoena rather than a Title III interception order. Hammond argues that these procedures violated the requirements of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.* ("Title III"), and that the tapes should accordingly be suppressed. We have jurisdiction pursuant to 18 U.S.C. § 1291, and agree with the district court that a Title III interception order was not necessary. Therefore, we affirm.

I

Hammond was convicted of possession of a handgun as a convicted felon and was incarcerated in Fort Dix, New Jersey. In August 2000, this court vacated Hammond's sentence and remanded the case

for a suppression hearing to determine whether the officers who found the handgun had first grabbed Hammond and thereby made an unlawful arrest. *United States v. Hammond,* 2000 WL 1139611 (4th Cir.2000) (Table). In connection with the suppression hearing, a witness who had not testified earlier in connection with the Hammond case, Queen Tynes, came forward and offered to corroborate Hammond's version of events. Given the timing of Tynes' appearance, the government became suspicious of Tynes' story and investigated her connection to Hammond. As part of this investigation, it obtained a subpoena for recordings of telephone calls made by Hammond during his incarceration.

The recordings were made as part of routine monitoring undertaken by the BOP. Pursuant to 28 C.F.R. § 540.102, the BOP monitors all outgoing inmate phone calls except those that are cleared in advance and made to counsel. Inmates receive notice of the monitoring by BOP in several forms. They receive two handbooks that state that all calls other than those to their attorneys are monitored. They sign a consent form acknowledging that their calls may be monitored and recorded and that use of the telephones constitutes consent of monitoring. They also receive an orientation lesson plan stating that calls are monitored and are told that such is the case orally during an orientation lesson. Finally, the BOP reminds the inmates that their calls may be monitored by placing notices of monitoring on or near the actual telephones. Calls are recorded at all times, and recordings are maintained on magnetic tapes connected to a computer that can search them by special inmate telephone identification numbers or the phone numbers called. BOP personnel do not actually listen to most tapes or conversations, and they apparently did not do so here.

After determining that the BOP had records indicating that Hammond had placed several calls to Tynes, the FBI subpoenaed the records as well as several tapes. The FBI then listened to and transcribed the calls, which it alleges show that Hammond coached Tynes about how to testify. Hammond was then indicted on 11 counts of witness tampering and obstruction of justice related to these calls.

Hammond sought suppression of the recorded telephone conversations, arguing that the recordings should be excluded from evidence because the government did not comply with the requirements of Title III. Specifically, Hammond argued that in order to listen to the tapes, the FBI was required to obtain a judicial interception order pursuant to 18 U.S.C. §§ 2516 and 2518, which set out procedural requirements and safeguards greater than those involved in obtaining a standard subpoena. The district court denied the motion, finding that the BOP had lawfully recorded Hammond's wire communications under the "law enforcement" and "consent" exceptions to Title III's general injunction against wiretapping. 18 U.S.C §§ 2510(5)(a)(ii), 2511(2)(c). Following the Seventh Circuit's interpretation of Title III in *In re High Fructose Corn Syrup Litigation,* 216 F.3d 621 (7th Cir.2000), the district court concluded that once a recording is permitted under either of the above exceptions, it is thereafter exempted from any further restrictions under Title III. Thus, the district court reasoned, the FBI was free to obtain the tapes from the BOP without any further judicial intervention.

The district court's order denying Hammond's motion to suppress issued June 12, 2001. On June 13, 2001, Hammond was re arraigned and pled guilty to one count of conspiracy to obstruct justice in violation of 18 U.S.C. § 371. The district court

permitted Hammond to enter a conditional plea to be withdrawn if he prevailed on this appeal. This timely appeal was filed on June 14, 2001.

## II

Interpretations of Title III are questions of law that we review in connection with a motion to suppress *de novo*. *United States v. Allen*, 159 F.3d 832, 838 (4th Cir.1998). We review the district court's findings of fact for clear error. *Id.*

■■■ Title III generally prohibits the unauthorized interception of "any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). It "protects an individual from all forms of wiretapping except when the statute specifically provides otherwise." *Abraham v. County of Greenville*, 237 F.3d 386, 389 (4th Cir.2001). Although the argument has been made that Title III was not intended by Congress to apply to prisons, it is well accepted that its protections do apply to that context. *See, e.g., United States v. Van Poyck*, 77 F.3d 285, 291 (9th Cir.1996); *United States v. Feekes*, 879 F.2d 1562, 1565 (7th Cir.1989); *United States v. Amen*, 831 F.2d 373, 378 (2d Cir.1987). Therefore, the tapes were properly used by the FBI only if (1) the initial interception by the BOP was lawful pursuant to an exception to the general injunction prohibiting use of wiretaps, and (2) the FBI's subsequent acquisition/use of the tapes was lawful.

■■ As to the initial interception, we conclude that both the "law enforcement" and "consent" exceptions rendered the BOP's recording of the tapes permissible. First, the "law enforcement" exception validated the use of the recordings. This exception excludes from the definition of "interception" recordings made by "any telephone or telegraph instrument, equipment or facility, or any component thereof

... being used by ... an investigative or law enforcement officer in the ordinary course of his duties." 18 U.S.C. § 2510(5)(a)(ii). Because the BOP was acting pursuant to its well-known policies in the ordinary course of its duties in taping the calls, the law enforcement exception exempted the actions of the BOP from the prohibitory injunction of Section 2511.

■■ We also find that Hammond consented to having his conversations intercepted in accordance with 18 U.S.C. § 2511(2)(c). That section provides:

It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

■■ We conclude that the "consent" exception applies to prison inmates, such as Hammond, required to permit monitoring as a condition of using prison telephones, joining other circuits which have found the exception to apply under very similar circumstances. *See United States v. Footman*, 215 F.3d 145, 154–56 (1st Cir.2000); *Van Poyck*, 77 F.3d at 292; *United States v. Workman*, 80 F.3d 688, 693 (2d Cir. 1996); *United States v. Horr*, 963 F.2d 1124, 1126 (8th Cir.1992).

■■ Having determined that the BOP's recording of the conversations was lawful, the only remaining issue is whether the FBI's acquisition of the BOP's tapes through subpoena itself constituted an independent "interception" subject to Title III's requirements. The Fourth Circuit has not addressed whether a subsequent listening to a taped conversation by an entity other than that which made the original recording constitutes an "interception." However, we are persuaded by

the reasoning of the Seventh Circuit in *In re High Fructose Corn Syrup Antitrust Litigation,* 216 F.3d 621 (7th Cir. 2000). There, the court was asked to consider whether the limits on the use and disclosure of intercepted communications imposed by Title III, 18 U.S.C. § 2517, applied to conversations that had been recorded by one of the participants. In analyzing this issue, the court read Sections 2516 to 2519 as a self-contained unit within Title III defining and implementing the regime for interceptions pursuant to a judicial interception order. *See id.* at 624–25. Under this reading, Section 2517 only limits the uses of communications permitted by means of such an order. *Id.* Since Title III imposes no other limitations on intercepted communications outside of the warrant regime, the Seventh Circuit concluded that "[s]ection 2511 exempts the conversations covered by it from the *entirety* of Title III." *Id.* at 625 (emphasis in original). Agreeing with this mode of analysis, we conclude that the FBI was free to use the intercepted conversations once they were excepted under either § 2510(5)(a)(1) or § 2511(2)(c).

We find Hammond's arguments to the contrary unpersuasive. Hammond first focuses on the language of Section 2510(4), which defines "intercept" in part as "the aural or other acquisition" of the contents of any wire communication. Hammond argues the common sense position that any hearing of the tapes is an "aural acquisition." However, by highlighting only this selected language, Hammond ignores that additional language in Title III suggesting that a communication is only "intercepted" at the time it is initially captured by a non-party. "Intercept" is defined as an "aural or other acquisition" of a wire communication *"through the use of any electronic, mechanical or other device."* 18 U.S.C.

§ 2510(4) (emphasis added). The concept here is clearly the capture of an audio signal containing linguistic data and the FBI cannot be said in this case to have "used" a "device" to "acquire" such a communication. Further, Section 2518, which describes the procedure for interception pursuant to a judicial order, also clearly operates in terms of a "capture" concept as it speaks in terms of measures to make interceptions unobtrusive to telecommunications systems, limited "periods" of interception, and recording the "contents" of an interception. 18 U.S.C. § 2518(4), (5), (8)(a). Section 2517 also clearly indicates that an interception is something that is obtained and held, contemplating the "disclosure" and "use" of "intercepted communications." 18 U.S.C. § 2517. Additionally, the legislative history of Title III similarly emphasizes the act of information capture, differentiating "interception" from "divulgence" and making clear that it is the former standing alone which is unlawful under Section 2511. 1968 U.S.C.C.A.N. 2112, 2179.

Second, Hammond argues, albeit largely implicitly, that Congress' clear purpose in enacting Title III to protect privacy requires a restrictive reading that limits the use of information contained in wire conversations according to the precise terms of the applicable exception or authorization. That is to say, Hammond would essentially have the court read the exceptions into the definition of "interception" such that any hearing that is not consented to or in the ordinary course of the FBI's business would be prohibited. However, the privacy rationale that Hammond claims supports his reading is not particularly compelling in this context. Though the statute does reflect congressional concern for protecting privacy, that concern does not extend to prison inmates, given their substantially reduced expectation of

privacy. *See, e.g., Van Poyck,* 77 F.3d at 290–91.

Hammond also argues that affirmance of the district court will so vitiate Title III as applied to the prison context as to contradict the established principle that it applies to begin with. This claim is without merit.

### III

For the foregoing reasons, the ruling of the district court is

*AFFIRMED.*