UNITED STATES of America

v.

**Robert CORREA and Shelton Lewis**

**No. CR.99–10416–EFH.**

United States District Court,
D. Massachusetts.

Sept. 18, 2002.

Kevin J. Reddington, Law Offices of Kevin J. Reddington, Brockton, MA, for Robert Correa, Defendant.

Charles P. McGinty, Federal Defender Office, Leo Sorokin, Public Defender Office, Boston, MA, for Shelton Lewis, Defendant.

Donald L. Cabell, United States Attorney's Office, Boston, for U.S. Attorneys.

### MEMORANDUM AND ORDER

HARRINGTON, Senior Judge,

*Introduction*

At issue in this Memorandum and Order is a motion by counsel for co-defendants Shelton Lewis and Robert Correa to sup-

press a September 9 telephone conversation between them.[1] The call was placed by Correa from the Plymouth County House of Correction ("Plymouth"), where Correa was detained, to an individual named Wilson. After Wilson accepted the call, Lewis took the receiver and talked with Correa. The call was recorded by Plymouth officials pursuant to its inmate telephone system policy. Law enforcement officials later listened to a recording of the call, as well as others made by Correa, with the assistance of a Plymouth employee. Because Correa consented to the monitoring and recording of his calls and because Plymouth's sharing of those recordings with law enforcement officials did not exceed the scope of Correa's consent, the motion to suppress the September 9 telephone conversation is denied. Further, even if the disclosure of the conversation to a member of the State Police and a member of the Brockton Police department had exceeded the scope of Correa's consent, that disclosure was proper under the law enforcement exception to Title III of the Omnibus Crime Control and Safe Streets Act of 1968. 18 U.S.C. § 2510(5)(a)(ii).

*Background*

Plymouth records all inmate calls, except those made to designated attorneys or clergy members, on reel-to-reel tapes. The calls also are subject to monitoring by prison employees.

The parties have stipulated that Massachusetts State Police Officer John Brooks and Detective Cummings of the Brockton Police Department went to Plymouth, where telephone systems administrator George Pyne played a recording of some of Correa's calls for them. The officers subsequently used what they heard to obtain a subpoena for cassette copies of the calls.

·· The telephone conversation between Correa and Lewis was recorded by Plymouth officials pursuant to the Plymouth Inmate Telephone System policy ("PCCF–482"). PCCF–482 was issued under authority granted to the superintendents of the Commonwealth's correction facilities by 103 C.M.R. 482, a regulation issued by the Department of Corrections and governing prison telephone access and use. Under the regulation, superintendents are to develop procedures to insure inmates have access to telephones, while ensuring the orderly and safe use of prison telephones. 103 C.M.R. 482.07(1).

Call monitoring and recording is explicitly authorized by 103 C.M.R. 482.07(3)(d). However, the regulation does not address the issue of whether law enforcement officials may be permitted, absent court order, to listen to inmate telephone calls. Instead, it is the Plymouth policy that states: "Criminal justice agencies outside the Plymouth County Sheriff's Department are allowed access to recorded tapes within the scope of their legally authorized request (i.e., court orders). Random or general access to monitored telephone conversations are [sic] strictly prohibited." PCCF–482 XVIII A.

Plymouth's recording and monitoring is not conducted surreptitiously. For example, when inmates protect calls to attorneys and clergy from this regime by placing excluded names and telephone numbers on a form entitled "Inmate List of Designated Telephone Numbers" ("Inmate List"), they see a notice stating that their use of an assigned pin number ("IPIN") to make calls from Plymouth constitutes consent to recording and monitoring. The notice states:

Your acceptance of the IPIN and use of the inmate telephones will be deemed as

---

1. Counsel for co-defendant Robert Correa orally joined the motion at a hearing on September 4, 2002. The initial motion was filed only by counsel for co-defendant Lewis.

consent to the conditions and restrictions placed upon inmate telephone calls, including call monitoring, recording, and call detail.

In addition, prior to making calls, inmates sign and date forms expressly consenting to such recording and monitoring. Finally, under the Plymouth policy, inmates and the recipients of their calls hear the following message before being connected:

> Nynex has a collect call from [name of inmate], an inmate at the Plymouth County House of Correction. To refuse this call, hang up. If you use three-way calling or call waiting, you will be disconnected. All call detail and conversation, excluding approved attorney calls, will be recorded. To accept this call, dial one now.

In this case, Lewis did not hear this announcement because he took the receiver after it was made. However, as discussed below, it is sufficient for purposes of this motion for the Court to concern itself only with Correa's consent.

## Discussion

### A. Scope of Consent

Counsel for the defendants argue that when Pyne allowed Brooks and Cummings

to listen to the recording of the conversation, he violated Title III, which prohibits, subject to certain exceptions, the interception of telephone conversations without a court order. 18 U.S.C. §§ 2510–2521. As a basis for their motion to suppress, counsel rely on a provision of Title III prohibiting the use as evidence of wire or oral communications intercepted in violation of this law. 18 U.S.C. § 2515.

At oral argument, defense counsel apparently conceded, however, that at first blush the so-called "consent exception" to Title III applies here. 18 U.S.C. § 2511(2)(c) states:

> It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

It is no longer an open question in this Circuit whether inmates may be deemed to have consented to monitoring and recording under a system like that employed at Plymouth. *See U.S. v. Footman*, 215 F.3d 145, 154–55 (1st Cir.2000). Addressing the Concord state prison, the First Circuit found in *Footman* that prisoners there who had received such notices had consented to the monitoring and recording. *Id.*[2]

**2.** The First Circuit noted that for Title III purposes it is settled law that only one party need consent to the interception of the calls. *Footman*, 215 F.3d at 154 citing *U.S. v. Pratt*, 913 F.2d 982, 986–87 (1st Cir.1990). When the prisoner is found to consent, "there is no need to go further." *Id.* However, in a filing, Lewis's counsel points to a footnote in *Footman* to suggest that, Correa's consent notwithstanding, the recording violated Lewis's privacy interests, providing a non-Title III basis for suppression. ("We do not address whether those privacy interests are given up by a person, outside of the prison context, merely because she accepts a call that has been preceded by a phone company announcement that the call is being recorded." *Footman*, 215 F.3d at 155 n. 12.). As

noted by the government, however, other courts have squarely addressed the question of whether a person has a reasonable expectation of privacy in telephone calls from a prisoner and found in the negative. *U.S. v. Willoughby*, 860 F.2d 15, 22 (2d Cir.1988) (holding interception of calls from inmates to noninmates does not violate the privacy rights of noninmates) cited with approval in *U.S. v. Peoples*, 71 F.Supp.2d 967, 977 (W.D.Mo.1999); *U.S. v. Harrison*, 986 F.Supp. 280, 280–82 (M.D.Pa.1997) (finding individual who knew he was talking to inmate had no reasonable expectation of privacy). To make out a Fourth Amendment violation, Lewis would first have to demonstrate a subjective expectation of privacy in the call. *See U.S. v. Mancini*, 8 F.3d 104, 107

Faced with this precedent, counsel for the defendants argue that the sharing of the recordings with law enforcement prior to the issuance of the subpoena nevertheless exceeded the scope of Correa's consent, and therefore, the September 9 telephone conversation should be suppressed. Specifically, defense counsel contend that the scope of Correa's consent was limited by two factors: the purpose for which inmate calls are monitored and recorded, or the object of the recording, in search and seizure terms, and the prohibition against random or general access by law enforcement agencies contained in PCCF–482.

Regarding defense counsel's first proposed limitation, it is settled that "the scope of a search is generally defined by its expressed object." *Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). However, Plymouth expressed no object for its monitoring and recording in any of the notices that form the basis for a finding of consent. Inmates, such as Correa, are told merely that all calls will be monitored and/or recorded. No indication of why the calls are recorded is given in the document entitled "Orientation to the Inmate Telephone System for Inmates," for example. Nor is a purpose stated in the Inmate Telephone List. The recorded message callers and recipients hear before a call is accepted by the recipient also fails to mention a reason for the recording. Finally, PCCF–482 express no object for the recording.

In an attempt to suggest an express object that would preclude sharing the content of the conversation with law enforcement officials, defense counsel points only to *Cacicio v. Secretary of Public Safety,* 422 Mass. 764, 768, 665 N.E.2d 85 (1996). According to defense counsel, *Cacicio* stands for the proposition that recording and monitoring may be used only to prevent inmates from using the telephones to plan escapes, organize drug trafficking, orchestrate criminal activities, and solicit murder; to prevent fraudulent use of third-party calls or telephone credit cards; and to prevent inmates from using telephones to harass members of the media, public officials, and victims. *Id.* However, these objects are merely the Supreme Judicial Court's description of the purpose of the regulation, which it distilled from an affidavit provided by the assistant deputy commissioner of secure facilities detailing some of the problems with the prison phone system prior to the regulation. *See id.* at 89 n. 8. This description by the Supreme Judicial Court of the Department of Corrections' purpose for recording is not part of what Plymouth tells its inmates about the telephone system. Nor is the *Cacicio* decision likely to be so familiar to inmates that prisoners such as Correa should be deemed to have impliedly limited their consent to recording only to the purposes catalogued by the Supreme Judicial Court.

Turning to defense counsel's second proposed limitation on the scope of Correa's consent, it cannot be disputed that Pyne violated PCCF–482 when he permitted Officer Brooks and Detective Cummings to listen to the recordings prior to the issuance of the subpoena. However, suppression does not necessarily follow. PCCF–482 was established, as noted earlier, under the power given correction facility superintendents by 103 C.M.R. 482. That regulation includes an important limitation: it does not create or confer any

(1st Cir.1993) (citing *California v. Greenwood,* 486 U.S. 35, 39, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988)). Defense has not made such a showing, perhaps because of Lewis' own history of incarceration and the likely familiarity with the fact that prison telephone calls are routinely monitored that would accompany such a history.

procedural or substantive rights or any private cause of action not otherwise granted by state or federal law. 103 C.M.R. 482.01. In effect, this provision of the regulation tells defendants they must look elsewhere for a limitation on the scope of Correa's consent.

■ As discussed, no such limitation exists. Co-defendant Correa consented to a monitoring and recording system that was unqualified in all relevant aspects. And, Plymouth officials expressed no object of the search that could be construed to limit its scope. Hence, the use of the recording as evidence is permissible under the consent exception to Title III. 18 U.S.C. § 2511(2)(c).

## B. The Law Enforcement Exception

■ As noted in the introduction to this order, the Court concludes that the disclosure by Pyne to Brooks and Cummings falls within the law enforcement exception of Title III, providing an independent ground for denying the motion to dismiss. 18 U.S.C. § 2510(5)(a)(ii). Specifically, Title III does not apply to communications intercepted by any device operated "by an investigative or law enforcement officer in the ordinary course of his duties." Id. Further, assuming that Pyne fits the definition of an "investigative or law enforcement officer" and that his interception of Correa's conversations occurred in the ordinary course of his duties, his disclosure is proper under 18 U.S.C. § 2517(1). This provision of Title III permits any investigative or law enforcement officer, who by any means authorized in Title III has obtained knowledge of the contents of any wire, oral, or electronic communication, "to disclose such contents to another law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure." Id. (Emphasis added.)

The Court's conclusion that Pyne's disclosure is protected by the law enforcement exception is the product of a three-part inquiry. The first addresses the question of whether prison officials, like Pyne, are law enforcement or investigative officers under the statute. The second is whether Pyne's recording occurred in the ordinary course of his duties. Finally, it must be decided whether the disclosure to Brooks and Cummings was proper in the absence of a court order. The Court addresses these questions in turn.

The Court concludes that Pyne, as an employee of Plymouth, was an investigative or law enforcement officer, based on numerous prior decisions deeming prison officials investigative or law enforcement officers for purposes of Title III. The First Circuit has not ruled unequivocally on the question, but in Gilday v. Dubois, the court left unchallenged a District Court's conclusion that Department of Corrections officials responsible for monitoring and recording prisoner calls came within the law enforcement exception. 124 F.3d 277, 282 n. 7 (1997). See also U.S. v. Hammond, 286 F.3d 189, 192 (4th Cir.2002) (applying law enforcement exception to recordings by employees of Bureau of Prisons); U.S. v. Van Poyck, 77 F.3d 285, 291–92 (9th Cir.1996) (applying law enforcement exception to recordings by employees of Metropolitan Detention Center); U.S. v. Sababu, 891 F.2d 1308, 1328–29 (7th Cir.1989) (recordings by employees of Leavenworth penitentiary); U.S. v. Feekes, 879 F.2d 1562, 1565–66 (7th Cir.1989); U.S. v. Paul, 614 F.2d 115, 117 (6th Cir.1980).

The Court's conclusion is unaffected by language in the definition of "investigative or law enforcement officer" limiting such designation to those "empowered ... to conduct investigations of or to make arrests for offenses enumerated in this chap-

ter." 18 U.S.C. § 2510(7).[3] This Court rules, as have the few courts that have construed this language, that prison officials must be deemed, at the least, to have authority to investigate potential criminal violations in the interest of prison security. *U.S. v. Clark,* 651 F.Supp. 76, 79 (M.D.Pa. 1986); *Crooker v. U.S. Department of Justice,* 497 F.Supp. 500, 503 (D.Conn.1980).

Reaching the second requirement of the law enforcement exception, this Court concludes that Pyne's recording was made in the "ordinary course of ... his duties" because it was done pursuant to 103 C.M.R. 482 and PCCF–482, and because Correa was not personally targeted by the recording program. This conclusion is supported by the weight of the case law. *Hammond,* 286 F.3d at 192 ("Because the [Bureau of Prisons] was acting pursuant to its well-known policies in the ordinary course of its duties in taping the calls, the law enforcement exception exempted the actions of the BOP from the prohibitory injunction in Section 2511"); *Van Poyck,* 77 F.3d at 292 ("[Metropolitan Detention Center] is a law enforcement agency whose employees tape all outbound inmate telephone calls; interception of these calls would appear to be in the ordinary course of their duties"); *Feekes,* 879 F.2d at 1565–66 ("The regulations of the Bureau of Prisons authorized the tape recording of all prisoner calls except to prisoners' lawyers, and [inmate's] calls to his son were recorded in accordance with this routine, which was the 'ordinary course' for the officers who supervised the monitoring system."). The recording of Correa's calls under PCCF–482 is distinguishable from the facts in *Campiti v. Walonis,* 611 F.2d 387, 392 (1st Cir.1979). There, the decision to assign the monitoring of an individual call to an investigator from the Department of Corrections Security Management Team who had not previously been involved in telephone monitoring was "an exceptional course of conduct" that fell outside the law enforcement exception. *Id.* In fact, in *Campiti,* the inmate was only allowed to make the call so that it could be monitored. *Id.* In contrast, Correa's calls were monitored pursuant to a general system that applied to all inmates. *See U.S. v. Cheely,* 814 F.Supp. 1430, 1439 (D.Alaska 1992) (finding law enforcement exception applied because recording was routine and not aimed at inmate "personally").

Finally, this Court concludes that, having lawfully intercepted Correa's calls, Pyne did not violate Title III by playing the tapes for Brooks and Cummings. Pyne's disclosure is exempted from Title III because any investigative or law enforcement officer who obtains knowledge of a wire, oral, or electronic communication lawfully under Title III may disclose such contents to another investigative or law enforcement officer to the extent such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure. 18 U.S.C. § 2517(1). In this case, Pyne obtained knowledge of Correa's communications by means authorized by Title III-consent and the law enforcement exception-and thus was free to disclose the contents to Brooks and Cummings to the extent it was appropriate to

---

3. "The relevant enumeration would appear to be in § 2516(2), which seems to include any state felony, i.e., offense with a potential punishment of more than one year." *U.S. v. Cheely,* 814 F.Supp. 1430, 1440 n. 8 (D.Alaska 1992). § 2516(2) indicates which offenses would permit a state prosecutor to seek a Title III judicial authorization for a wiretap.

The relevant portion reads: "... murder, kidnapping, gambling, robbery, bribery, extortion, or dealing in narcotic drugs, marihuana or other dangerous drugs, or other crime dangerous to life, limb, or property, and punishable by imprisonment for more than one year [under state statutes]..." § 2516(2).

the proper performance of his official duties or of the official duties of Brooks and Cummings. *Id. See Hammond,* 286 F.3d at 191 ("... once a recording is permitted under either [the consent or law enforcement exceptions], it is thereafter exempted from any further restrictions under Title III. Thus, ... the FBI was free to obtain the tapes from the [Bureau of Prisons] without any further judicial intervention.") (citing *In re High Fructose Corn Syrup Litigation,* 216 F.3d 621 (7th Cir.2000)). In this case, disclosure absent a court order was not appropriate to Pyne's official duties, given that Plymouth's policy conditions access to recordings by outside criminal justice agencies upon legal authorization. PCCF–482 XVIII A. However, it is beyond dispute that it was proper for Brooks and Cummings, who were investigating the alleged crimes of Correa and Lewis, to obtain evidence against the two men by any lawful means. *See Hammond,* 286 F.3d at 191.[4]

## Conclusion

The Court concludes that Pyne did not violate Title III when he recorded Correa's telephone calls and played tapes of those conversations for Brooks and Cummings. Rather, Correa consented unqualifiedly to the recording. Furthermore, Pyne's actions, as they comported with Plymouth's routine call monitoring and recording re-

gime, were the actions of an investigative or law enforcement officer acting in the ordinary course of his duties. For both reasons, the interception and disclosure were lawful under Title III and there are no grounds for excluding the use of the recordings as evidence at trial. Defendants' motion to suppress is denied.

SO ORDERED.

---

4. Defense's argument that an interception occurred when Pyne, Brooks, and Cummings listened to the recording and that this listening was for investigative purposes and outside the law enforcement exception ignores the exception to Title III's disclosure prohibition contained in 18 U.S.C. § 2517(1) and discussed above. *U.S. v. Lanoue,* the case to which defense points for the proposition that a subsequent listening should be analyzed as an independent interception, offered only guidance to the trial court on the Title III issues before it. 71 F.3d 966, 980–82 (1st Cir.1995). It did not reach the application of 18 U.S.C. § 2517(1). Although the First Circuit stated that a conversation is intercepted when it is heard by someone other than the parties to the conversation, whether by listening as the conversation takes place or by tape

recording and listening afterwards, it too noted that if the recording in that case were determined to have been for prison security purposes the law enforcement exception would bar suppression. *Id.* at 981–82. In *Lanoue,* it appears that an investigating law enforcement official had requested that the prison keep track of all calls made by a particular inmate, suggesting an investigatory purpose. *Id.* at 972. In this case, the conversation was captured by a uniform recording policy executed in the ordinary course of Pyne's duties, not as part of an investigation of Correa.